THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. STEVEN PALMER, Defendant-Appellee.

Second District   No. 2—88—0254

Opinion filed September 6, 1989.

Fred L. Foreman, State's Attorney, of Waukegan (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE NASH delivered the opinion of the court:

The State appeals pursuant to Supreme Court Rule 604(a) (107 Ill. 2d R. 604(a)) from an order dismissing an indictment charging murder brought against defendant, Steven Palmer. In 1984, defendant was first indicted for the murder of Thomas Degen, and, after trial, a jury returned a verdict finding him to be guilty but mentally ill, and he was sentenced to a term of natural-life imprisonment. In *People v. Palmer* (1985), 139 Ill. App. 3d 966, 487 N.E.2d 1154, this court reversed defendant's conviction on finding that a reasonable doubt remained whether he was sane at the time of the offense, and remanded the cause for the entry of a judgment of not guilty by reason of insanity. On October 28, 1987, a new indictment was returned by a grand jury against this defendant for the murder of Degen, which the trial court dismissed as barred by principles of double jeopardy.

In the present appeal, the State contends that our reversal of defendant's conviction in *Palmer* was based on the weight, rather than the sufficiency, of the evidence, and that the 1987 indictment was thus not barred by double jeopardy or the doctrines of *res judicata* or collateral estoppel.

The facts were noted in the first appeal of this case. On December 28, 1983, defendant stabbed 14-year-old Thomas Degen while in line at a McDonald's restaurant in Waukegan; the child later died of his injuries. After the stabbing, defendant ran to a nearby bowling alley

and exhibited bizarre behavior until the police arrived. At trial, there was extensive testimony with respect to defendant's past and present mental condition from four expert witnesses, defendant's father, and other lay witnesses. Defendant, who was 32 years old, had exhibited extremely abnormal behavior since age 17 and had been diagnosed as having schizophrenia; he had been treated for that illness for several years by numerous doctors and as an inpatient and outpatient at several hospitals. He was being treated for his psychosis at the time he stabbed Degen.

Each of the three expert witnesses who testified on defendant's behalf stated that he was suffering from paranoid schizophrenia and that his psychosis was severe. Two of the defense experts testified that defendant was unable to distinguish right from wrong and unable to conform his conduct to the requirements of the law at the time of the offense. The State's expert, Dr. Ronald Baron, testified that, in his opinion, defendant was faking his psychosis. Dr. Baron did not agree that defendant was a paranoid schizophrenic, yet, could not unequivocally state whether defendant was schizophrenic. At many points in his testimony, Dr. Baron's statements were self-contradictory and speculative. When he examined defendant, Dr. Baron found no evidence of defendant's psychosis, but he stated that defendant was "grossly psychotic" on the day of the stabbing; that he was able to distinguish right from wrong and could conform his conduct to the requirements of the law; and, that he was not mentally ill. Dr. Baron considered that defendant suffered from a drug-induced psychosis, but the doctor failed to examine defendant for any signs of drug usage or administer any drug tests. A jury found defendant guilty, but mentally ill, and a sentence of natural-life imprisonment was imposed. On appeal, this court reversed defendant's conviction, finding that there was no real evidentiary conflict for the jury to resolve because the testimony of the lay witnesses corroborated the defense experts' conclusion and Dr. Baron's testimony was weak and self-contradictory. This court concluded that a reasonable doubt remained as to defendant's sanity at the time of the offense which required reversal of the conviction. *Palmer*, 139 Ill. App. 3d at 973-74, 487 N.E.2d at 1159.

The State filed a petition for rehearing, asserting that this court had improperly substituted its judgment for that of the jury on the issue of the credibility of the expert witnesses. After consideration of the State's petition for rehearing, we denied it (*Palmer*, 139 Ill. App. 3d 966, 487 N.E.2d 1154), and our supreme court denied the State's petition for leave to appeal. Upon the issuance of our mandate, the trial court entered a judgment of not guilty by reason of insanity

whereupon the State moved for reinstatement of the guilty but mentally ill verdict, asserting that the appellate court judgment was void. The trial court denied the State's motion, and the State then sought an original writ of *mandamus* or supervisory order from our supreme court. In *People ex rel. Foreman v. Nash* (1987), 118 Ill. 2d 90, 514 N.E.2d 180, the supreme court determined that issuance of a writ of *mandamus* or prohibition, or a supervisory order, was inappropriate because it would in effect constitute an additional appeal to which the State was not entitled. (118 Ill. 2d at 98-99.) On September 14, 1988, we reissued a mandate directing the trial court to enter a judgment of not guilty by reason of insanity.

On October 28, 1987, defendant was reindicted by a grand jury for the murder of Thomas Degen. His motion to dismiss the indictment on grounds it was as barred by double jeopardy and the doctrines of *res judicata* and collateral estoppel was granted by the trial court, and the State has again appealed.

■ We consider first defendant's argument that, because the 1987 indictment was returned prior to this court's September 14, 1988, mandate, the circuit court lacked jurisdiction to proceed on the new indictment, and it was void. We disagree. Defendant correctly notes that once appellate jurisdiction attaches it continues until a mandate is issued and filed in the circuit court. (See *People v. McBride* (1983), 114 Ill. App. 3d 75, 79, 448 N.E.2d 551, 553; *People v. Baker* (1980), 85 Ill. App. 3d 661, 662, 406 N.E.2d 1152, 1153.) However, appellate jurisdiction of the 1984 indictment did not preempt the trial court from proceeding on a new indictment returned against defendant by a grand jury. Our 1988 mandate concerned an appeal taken from defendant's conviction under the 1984 indictment and had no effect on the return and filing of a new indictment in 1987. The trial court properly exercised its original jurisdiction over the 1987 indictment. See Ill. Const. 1970, art. VI, §9.

Citing *Tibbs v. Florida* (1982), 457 U.S. 31, 72 L. Ed. 2d 652, 102 S. Ct. 2211, the State contends that it should not be barred from reprosecuting defendant on the ground of double jeopardy because, it asserts, the reversal of defendant's conviction was based on the weight, rather than the sufficiency, of the evidence. The State argues that our reversal in *Palmer* was based on the weight of the evidence because we found that Dr. Baron's testimony was not credible.

■ In *Tibbs*, the Supreme Court decided the issue of whether the double jeopardy clause (U.S. Const., amend. V) bars retrial after a reviewing court sets aside a conviction on the ground that the verdict was against the manifest weight of the evidence. (*Tibbs*, 457 U.S. at

32, 72 L. Ed. 2d at 655, 102 S. Ct. at 2213.) In deciding that question, the court noted that *Burks v. United States* (1978), 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141, had carved a narrow exception to the general rule that a defendant who successfully appeals his conviction is subject to retrial. (*Tibbs,* 457 U.S. at 40, 72 L. Ed. 2d at 660, 102 S. Ct. at 2217.) Under the *Burks* exception, if a reviewing court determines that the evidence is legally insufficient to support a conviction, the double jeopardy clause precludes retrial. (*Burks,* 437 U.S. at 18, 57 L. Ed. 2d at 14, 98 S. Ct. at 2150-51.) The *Burks* court stated that "legally insufficient" means that the government's case was so lacking that it should not have been submitted to the jury. *Burks,* 437 U.S. at 16, 57 L. Ed. 2d at 12-13, 98 S. Ct. at 2150.

The *Tibbs* court, however, reaffirmed the general rule that principles of double jeopardy do not have the same force when a reviewing court disagrees with a jury's resolution of conflicting evidence and concludes that a guilty verdict is against the manifest weight of the evidence. (*Tibbs,* 457 U.S. at 42, 72 L. Ed. 2d at 661, 102 S. Ct. at 2218.) The court stated:

"A reversal on this ground [weight of the evidence], unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Instead, the appellate court sits as a 'thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony. This difference of opinion no more signifies acquittal than does a disagreement among the jurors themselves. A deadlocked jury, we consistently have recognized, does not result in an acquittal barring retrial under the Double Jeopardy Clause. Similarly, an appellate court's disagreement with the jurors' weighing of the evidence does not require the special deference accorded verdicts of acquittal." *Tibbs,* 457 U.S. at 42, 72 L. Ed. 2d at 661-62, 102 S. Ct. at 2218.

The Illinois Supreme Court has also recognized that a reversal based on the weight, rather than the sufficiency, of the evidence does not bar retrial. See *People v. Davis* (1986), 112 Ill. 2d 78, 491 N.E.2d 1163.

We apply the principles set forth in *Tibbs, Burks,* and *Davis* to the facts of this case. In *Palmer,* defendant argued that his conviction should be reversed because the State failed to prove his sanity beyond a reasonable doubt. (*Palmer,* 139 Ill. App. 3d at 972, 487 N.E.2d at 1158.) In determining that the State failed to meet its burden, this court noted that there was no real evidentiary conflict for the jury to resolve. Essentially, the State had presented no evidence which

tended to show defendant was sane at the time of the offense, which the State was required, under the law then in effect, to prove beyond a reasonable doubt.

'Based on his speculation that defendant was suffering from a drug-induced psychosis, the State's expert, Dr. Baron, concluded that at the time defendant stabbed Degen he knew the difference between right and wrong and had the ability to conform his conduct to the requirements of the law. The State offered no other evidence that defendant was sane at the time of the stabbing. Dr. Baron's opinion was necessarily discounted, however, because he acknowledged that he did not examine defendant for signs of current drug use or administer tests designed to detect the presence of drugs in defendant's system, and also testified defendant was "grossly psychotic" at the time of the offense. Clearly, there was no evidentiary basis to support the State's theory, or Dr. Baron's opinion, that defendant's acts were the result of a drug-induced psychosis.

■ In light of the lack of evidence of defendant's sanity in the State's case, our reversal of the conviction in *Palmer* was based on the legal insufficiency of the evidence and not the weight of the evidence, as suggested by the State. Because the reversal of a defendant's conviction for insufficiency of the evidence bars retrial under the double jeopardy clause (*Burks*, 437 U.S. at 18, 57 L. Ed. 2d at 14, 98 S. Ct. at 2150-51), the trial court properly dismissed the 1987 indictment for the same offense against defendant. In deciding this issue as we have, it is unnecessary to address whether the 1987 indictment was also barred under the doctrines of *res judicata* or collateral estoppel.

■ Discussion of the established doctrines of *res judicata* and estoppel aside, it would, indeed, be a novel, and unfortunate, evolution of criminal jurisprudence to permit the State to simply recharge an accused by indictment, information, or complaint, and again put him to trial, where it has been established that the State neglected, or was unable, to offer sufficient evidence to sustain a judgment of conviction in an earlier trial for the same offense. The State did fail in this case to carry its burden of proving defendant's sanity beyond a reasonable doubt, as the law then required where other evidence has raised that defense. (*People v. Palmer* (1986), 139 Ill. App. 3d 966, 972, 487 N.E. 2d 1154; *People v. Silagy* (1984), 101 Ill. 2d 147, 168-69, 461 N.E.2d 415; Ill. Rev. Stat. 1981, ch. 38, pars. 3—2, 6—2.) A trial court determination that a defendant was sane at the time of an offense must be reversed, under the law, if so improbable or unsatisfactory under the evidence presented as to create a reasonable doubt

as to defendant's sanity, or if it was so clearly erroneous under the evidence as to suggest a defendant was considered sane because of passion or prejudice. *People v. Silagy*, 101 Ill. 2d at 169, 461 N.E.2d at 425-26.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

McLAREN and REINHARD, JJ., concur.