THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES B. FELD *et al.*, Defendants-Appellants.

Second District No. 2—93—0448

Opinion filed October 11, 1994.

Kathleen I. Niew, of Niew & Associates, P.C., of Hinsdale, and Robert T. Vaughn, of Nashville, Tennessee, for appellants.

David R. Akemann, State's Attorney, of St. Charles (William L. Browers and Lisa A. Hoffman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

The defendants, James B. Feld and William S. Munson, appeal their convictions following a bench trial on two counts of violating the Drug Paraphernalia Control Act (Drug Act). (Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, par. 2101 *et seq.* (now 720 ILCS 600/1 *et seq.* (West 1992)).) For the following reasons, we reverse the convictions.

On April 18, 1991, police officers executed a search warrant at Grove Manufacturing, Inc. (Grove), in Sugar Grove, Illinois, which manufactures a variety of wood products. Pursuant to the warrant, the officers seized various items alleged to be drug paraphernalia, including empty wooden boxes with sliding tops and small wooden pipes. The boxes are made according to specifications provided by Contempo Products of Nashville, Tennessee, which fits the unfinished boxes with metal cylinders and sells them under the name Dugout Smoking System. No metal cylinders, smoking tubes or springs were found by the police at Grove's manufacturing plant. The finished boxes and the pipes made by Grove are alleged by the State to be used primarily for smoking cannabis.

On May 3, 1991, the defendants were charged with violating the Drug Act. Munson was the production manager for Grove; Feld was the general manager. The defendants pleaded not guilty on June 5, 1991. They then filed motions to suppress evidence, quash their arrests, and dismiss the complaints. The motions were denied on October 2, 1991, following a hearing. At the same time, the trial court ordered some of the property seized from Grove returned to the defendants. After further pretrial motions, the matter proceeded to a bench trial on March 15, 1993.

Former Sugar Grove police officer Bradley Sauer testified that he helped execute the warrant at Grove during which officers seized some 5,400 unfinished Dugout boxes. Sauer said he also confiscated a copy of "High Times" magazine, which allegedly is read by users of illicit drugs, as well as a catalog and mailing invoices.

Officer Gerald Lange testified that he interviewed the defendants and was told by Feld that he had not read "High Times." Lange said Munson told him he had "flipped through" the magazine but did not read it thoroughly. Lange also said he bought some finished Dugout boxes at a local retailer described as a "head shop," a business associated with the drug culture. Lange said that in his experience as a police officer, whenever he found a Dugout box, he found cannabis but never tobacco.

Officer Michael Sullivan said that in his experience wooden pipes of the type found at Grove were associated with illicit drugs.

Ken Raiser, a forensic chemist with the State Police, said that he

often tested Dugout boxes for traces of drugs and that the boxes often tested positive for drugs but never for tobacco. Paul Titus, also a forensic scientist, offered testimony similar to Raiser's.

Douglas Needham testified as an expert in drug paraphernalia. He said that Dugout boxes were used to ingest illicit drugs and never tobacco. Officer Victor Fields also testified that Dugout boxes were used for drugs and not tobacco.

Charles Levi, a tobacco dealer, testified that the wooden pipes confiscated from Grove were not of a type suited to tobacco use because they were made of teakwood, which burns and scorches when tobacco is smoked in it. Levi said that tobacco pipes were more commonly made of briarwood, cherry wood, and the fossil mineral meerschaum because those materials did not scorch or burn when smoked with tobacco.

Levi said that he had never seen Dugout boxes in legitimate tobacco shops and that they were not suited to tobacco use because they hold too little smoking material. On cross-examination, Levi said that a tobacco industry magazine "Smokeshop" did carry advertisements for Dugout boxes and that the tobacco retailers association to which he belongs had a policy that prohibits display of drug paraphernalia.

Following the denial of a motion by Feld for a directed finding of not guilty at the close of the State's case, the defense offered the testimony of Stuart Silber, a long-time pipemaker and tobacconist, who said that the pipes and boxes at issue were suited to smoking tobacco and that he had seen them used with tobacco.

The defense also offered the videotaped deposition of tobacco expert Benjamin Rapaport. However, neither the videotaped deposition nor a verbatim transcript of that deposition was included in the record on appeal. As such, we may not consider it. *People v. Thomas* (1991), 220 Ill. App. 3d 110, 128.

Defendant Feld testified, but Munson did not. Feld said that he had seen a promotional videotape made by Contempo to market the Dugout Smoking System. On cross-examination, Feld said that his firm made the unfinished wooden box and that he was aware that a metal cylinder was placed inside the box after it left his firm. Feld said that Grove had an interest in seeing that the Dugout boxes were marketed effectively.

The trial court found the defendants guilty. Each defendant was fined $3,000 and placed on one year of conditional discharge. Following unsuccessful motions to reconsider or for a new trial, the defendants appealed.

On appeal the defendants claim that (1) the Drug Act is

unconstitutionally vague; (2) the State failed to prove that the defendants had the requisite mental intent to "market" drug paraphernalia; (3) the trial court admitted evidence that had no nexus between the defendants and the crime charged; and (4) the trial court improperly declined to return certain seized property to the defendants.

The defendants claim that the Drug Act is unconstitutionally vague because it fails to provide fair notice to potential offenders as to what characteristics various items must possess to qualify as illegal paraphernalia. This claim is without merit.

Section 2(d) of the Drug Act defines "[d]rug paraphernalia" as "all equipment, products and materials of any kind which are *peculiar to and marketed for* use \*\*\* [with] a controlled substance." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 56$^{1}$/$_{2}$, par. 2102(d) (now 720 ILCS 600/2 (West 1992)).) A statute is unconstitutionally vague if it fails to give a person of ordinary intelligence fair notice that his or her contemplated conduct is forbidden by statute or if it delegates basic policy matters to officials with the attendant danger of encouraging arbitrary enforcement. (*Grayned v. City of Rockford* (1972), 408 U.S. 104, 108-09, 33 L. Ed. 2d 222, 227-28, 92 S. Ct. 2294, 2298-99.) To sustain a vagueness challenge, the person alleging vagueness must prove that the statute is not merely imprecise but that it articulates no standard of conduct at all. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 495 n.7, 71 L. Ed. 2d 362, 369 n.7, 102 S. Ct. 1186, 1191 n.7.

■ Citing both *Hoffman Estates* and *Grayned*, the Appellate Court, First District, declared in *Adams Apple Distributing Co. v. Zagel* (1986), 152 Ill. App. 3d 157, that section 2(d) of the Drug Act, the definition section, is not unconstitutionally vague. In reaching its conclusion, the court declared:

> "[T]he statute [Drug Act] generally defines drug paraphernalia in six ways and specifically lists 10 items that have been determined to constitute drug paraphernalia. A statute is not unconstitutionally vague merely because the legislature has not delineated every conceivable item that may fall within the statute's proscription. Moreover, the Supreme Court has stated that the presence of a *scienter* requirement in a statute, such as that before us, militates against a finding of vagueness." *Adams Apple*, 152 Ill. App. 3d at 160.

One year after *Adams Apple* was decided, our supreme court, in *People v. Monroe* (1987), 118 Ill. 2d 298, also citing *Hoffman Estates* and *Grayned*, declared that the Drug Act was unconstitutionally vague because it contained an internal inconsistency as to the mental

state required for a conviction. (*Monroe*, 118 Ill. 2d at 303-05.) The court ruled that section 3(a) was invalid because it permitted a conviction upon a showing that a seller " 'reasonably should have known' an item to be drug paraphernalia. As such, the penalty section allows for violations based upon the constructive knowledge of the seller and therefore directly conflicts with the definition section," *which requires a showing* of *scienter* for a conviction. *Monroe*, 118 Ill. 2d at 303.

In 1989, the Illinois General Assembly amended section 3(a) to omit the offending "constructive knowledge" language. (Pub. Act 86—271, eff. August 22, 1989 (amending Ill. Rev. Stat. 1989, ch. 56¹/₂, par. 2103(a) (now 720 ILCS 600/3(a) (West 1992))).) Section 3(a) now reads:

> "Any person who keeps for sale, offers for sale, sells, or delivers for any commercial consideration any item of drug paraphernalia commits a Class 4 felony for which a minimum fine of $1,000 for each such item shall be imposed." Ill. Rev. Stat. 1991, ch. 56¹/₂, par. 2103(a) (now codified, as amended, at 720 ILCS 600/3(a) (West 1992)).

The current version of section 3(a) contains no conflict with section 2(d). Now, proof of *scienter* by the defendant is required for a conviction under the Drug Act and, therefore, the constitutional infirmity has been removed.

We note that the supreme court in *Monroe* never doubted the validity of section 2(d), the definition section at issue here. Indeed, the court declared:

> "By defining drug paraphernalia as that which is 'peculiar to and marketed for use' with drugs, the legislature sought to remove any uncertainty as to what constitutes drug paraphernalia by defining it with reference to the seller's marketing intentions. By linking the very definition of drug paraphernalia to the seller's marketing intentions, the legislature precluded the possibility of persons being convicted without adequate notice." *Monroe*, 118 Ill. 2d at 303.

As such, *Monroe* did not overrule, but reaffirmed, *Adams Apple*. Therefore, the defendants' claim that the Drug Act is unconstitutionally vague must fail.

The defendants' second claim, that the State failed to prove they possessed the requisite intent to "market" items as drug paraphernalia, is persuasive.

As we have noted, the supreme court in *Monroe* pointed out that the phrase "marketed for" requires a showing that the defendants intended to market their product for use with illicit drugs. The United States Supreme Court in *Hoffman Estates* declared that

"marketed for" "requires *scienter*, since a retailer could scarcely 'market' items 'for' a particular use without intending that use." (*Hoffman Estates*, 455 U.S. at 502, 71 L. Ed. 2d at 374, 102 S. Ct. at 1195.) The defendants claim that the State did not produce sufficient evidence on an element of the crime charged—*scienter*—to find them guilty beyond a reasonable doubt.

When we review the sufficiency of the evidence, our standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Sutherland* (1992), 155 Ill. 2d 1, 17.) This standard applies to bench trials. *People v. Marshall* (1993), 256 Ill. App. 3d 310, 322.

In all criminal prosecutions, the State has the burden of proving all of the material and essential facts constituting the crime beyond a reasonable doubt. (Ill. Rev. Stat. 1991, ch. 38, par. 3—1 (now 720 ILCS 5/3—1 (West 1992)); *People v. White* (1993), 241 Ill. App. 3d 291, 301.) We also note that, although the trier of fact is entitled to deference in its findings (*People v. Herrett* (1990), 137 Ill. 2d 195, 206), the Drug Act establishes a strong presumption, not present in other criminal statutes, which is particularly favorable to defendants. Section 6 provides:

> "This Act is intended to be used solely for the suppression of the commercial traffic in items which, within the context of the sale or offering for sale, are clearly and beyond a reasonable doubt marketed for the illegal and unlawful use of cannabis or controlled substances. To this end *all reasonable and common-sense inferences shall be drawn in favor of the legitimacy of any transaction or item.*" (Emphasis added.) Ill. Rev. Stat. 1991, ch. 56$^1$/2, par. 2106 (now 720 ILCS 600/6 (West 1992)).

Here, the record indicates that the State failed to demonstrate any attempt by *these* defendants to market items that are peculiar to illicit drug use. Therefore, the trial court could not find beyond a reasonable doubt that *these* defendants had the requisite intent to market the wooden pipes and unfinished Dugout boxes as drug paraphernalia.

Section 2(d) of the Drug Act, as we have noted, defines "[d]rug paraphernalia" as items "peculiar to *and* marketed for use" with illicit drugs. (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 56$^1$/2, par. 2102(d) (now 720 ILCS 600/2(d) (West 1992)).) The language is clearly conjunctive. The State must prove beyond a reasonable doubt that the items at issue are "peculiar to" drug use *and* that the defendants "marketed" those items as drug paraphernalia.

Here, the State presented a parade of police officers and forensics

experts, as well as a tobacco dealer, who testified that Dugout boxes were used to ingest drugs and not tobacco. The State also demonstrated that the small wooden pipes were associated with illicit drug use. The defense countered with one tobacco expert, who said that the Dugout boxes were used legitimately by persons who want to cut down on smoking tobacco, so they use the small Dugout boxes, which accommodate only a small amount of tobacco.

■ We need not determine whether the State produced sufficient evidence to demonstrate that the wooden pipes and unfinished Dugout boxes at issue are "peculiar to" drug use, because we conclude that the State did not demonstrate through its sundry anecdotal evidence that the defendants had the requisite intent to market those pipes and boxes as drug paraphernalia. See *People v. Evans* (1994), 259 Ill. App. 3d 650, 657-58 (noting that merely because an item may be associated with drug use does not mean that it can have no legitimate use).

In criminal cases, a person "intends, or acts intentionally or with intent, to accomplish a result or engage in conduct described by the statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct." (Ill. Rev. Stat. 1991, ch. 38, par. 4—4 (now 720 ILCS 5/4—4 (West 1992)).) Intent is most commonly proved through the use of circumstantial evidence, and a defendant's intent may be inferred from the surrounding facts and circumstances, including his words and actions. *People v. Steffens* (1985), 131 Ill. App. 3d 141, 148-49.

Here, the State's entire case focused on the most common use of the pipes and boxes, and the State sought to demonstrate guilty knowledge on the part of the defendants by inference. There was no testimony or other direct evidence as to what any persons working at Grove knew or thought about the use to which their pipes and boxes were put.

The State offered the testimony of Officer Gerald Lange, who interviewed the defendants after their arrests and transcribed the questions and answers. Lange testified that he asked the defendants what they understood to be the primary use of the Dugouts and pipes produced by Grove. Lange said the defendants responded that tobacco was the primary use. Lange said he asked Feld if the boxes could be used for other substances, and Feld responded that they could be so used. Lange said he next asked both defendants if they were aware that the boxes and pipes were often found to be used with illegal substances, and both responded that they had not seen the pipes and boxes in use anywhere in the area.

Thus, the defendants did not admit they were aware that the

pipes and boxes were primarily used with drugs. We agree with the defendants that whether a product "could" be used with drugs does not indicate that the items are "peculiar to" drug use or that the defendants were aware of any link between the items and illicit drug use. See *Evans*, 259 Ill. App. 3d at 657-58. But see *People v. Crow's Nest, Inc.* (1985), 137 Ill. App. 3d 461, 463-64 (holding that an item is "peculiar to" drug use if it is "primarily" associated with drug use).

The State relied on circumstantial evidence, as it was entitled to do, but only established that the defendants were engaged in producing items that others associate with illicit drugs. The State sought to bootstrap the argument that, because small wooden pipes and Dugout boxes are often used with illicit drugs, the defendants knew of the items' illicit nature and, therefore, must have intended to market the boxes and pipes as drug paraphernalia. There was insufficient evidence to prove the defendants' guilty knowledge beyond a reasonable doubt.

The State never established that the defendants had any ownership interest in Grove. Munson was the production manager; Feld was the general manager. The State offered evidence that Feld had "full authority to run the business" and that Munson had similar authority under Feld. This does not mean, however, that either of the defendants actually made a decision, or acquiesced in a decision or scheme, to market drug paraphernalia.

The mere existence at Grove's offices of a copy of "High Times" magazine is probative of nothing. There was no evidence that the magazines belonged to the defendants. The State introduced evidence that Feld did not read the magazine and that Munson only glanced through it. No evidence refuted this. Even if the State had shown that the defendants owned or carefully read the magazine, it is no crime to read a magazine that some people believe appeals to the drug culture. It would be generous to characterize as even marginal circumstantial evidence the suggestion that illicit activity must have been afoot at Grove because someone brought a "High Times" magazine to work.

Feld stated on cross-examination that he watched a promotional video for the Dugout and that he had an interest in the sales success of that product. However, Feld did not testify that he knew the Dugout was marketed to an illicit trade or that he had any hand in shaping or directing marketing efforts for the Dugout.

The State acknowledged throughout the trial that the Dugout was not directly marketed to drug users. Rather, the State contended that the appeal to the drug trade was implicit or suggested and that, despite a respectable "front" in the promotion of the boxes, the

Dugout's advertising was actually a facade masking Grove's true intent to market drug paraphernalia. Although this is an intriguing theory, the State never produced any evidence to support it. The State's case on this point amounted to arguing that the Dugout marketing campaign was facially legitimate and that the Dugout was actually *used* primarily for smoking cannabis. The State never established that any illicit "unstated" marketing strategy in fact existed, much less that the defendants participated in it.

Two drug paraphernalia cases from the Appellate Court, Third District, are instructive here.

In *People v. Crow's Nest, Inc.* (1985), 137 Ill. App. 3d 461, the appellate court affirmed a circuit court order enjoining the defendant from further sales of alleged drug paraphernalia and providing for the forfeiture of confiscated items pursuant to the Drug Act. However, three key features distinguish that case from the present matter. First, the defendant in *Crow's Nest* was the business entity that actually sold the illicit items, so there was no doubt, as there is here, that the defendant owned the business and was, therefore, responsible for its marketing. Second, the *Crow's Nest* defendant was involved in the retailing of smoking accessories directly to the public. Here, the defendants are manufacturers of items that are sold to the public by others.

We do not hold that only retailers may be prosecuted under the Drug Act. However, when a firm, as here, manufactures items that are *marketed by others,* there is a second layer of activity which complicates the showing of intent to market.

Third, there was clear evidence in *Crow's Nest* of the defendant's intent to market drug paraphernalia, which is lacking here. The appellate court in *Crow's Nest* found that the posting of signs by the defendant that items of alleged drug paraphernalia should not be used illicitly and requiring customers to sign disclaimer statements that they would not use items purchased at the shop for illicit purposes supported a conclusion that the defendants were aware that they were dealing in illicit items. "Such disclaimers by the defendant represent his awareness of the nature of the items sold and cannot relieve the defendant from the responsibility for their sale." *Crow's Nest,* 137 Ill. App. 3d at 465.

The Appellate Court, Third District, citing its earlier decision in *Crow's Nest,* affirmed a nuisance conviction and injunction in *People v. Ziegler* (1986), 139 Ill. App. 3d 1088. The defendant in *Ziegler* was the principal owner and manager of a mail order business that sold items alleged to be drug paraphernalia. As in *Crow's Nest,* the defendant in *Ziegler* marketed its products directly to the public and

included disclaimers in its catalogs that merchandise should not be used illicitly.

Further evidence of intent to market was found in *Ziegler* in the fact that several of the items at issue were products specifically enumerated in the Drug Act as being drug paraphernalia, including "water pipes, bongs, cocaine spoons, cocaine vials, *** metal pipes and one-hitter pipes." (*Ziegler*, 139 Ill. App. 3d at 1090; see Ill. Rev. Stat. 1991, ch. 56$^1$/2, par. 2102(d)(5) (now 720 ILCS 600/2(d)(5) (West 1992)).) In addition, the court in *Ziegler* noted that "the sincerity of the disclaimers is subject to doubt when the pipes and other items are sold under trade names which incorporate slang identified with the illegal drug trade." *Ziegler*, 139 Ill. App. 3d at 1092.

In the present matter, no disclaimers were involved. Of course, we do not mean to imply that a defendant may avoid conviction under the Drug Act simply by avoiding the use of disclaimers and remaining mute as to his or her knowledge of the use of items alleged to be drug paraphernalia. However, because intent to market is an element of any crime charged under the Drug Act, the State has the burden of proving intent, and all other elements of the crime charged, beyond a reasonable doubt. No such showing was made by the State here.

The State directs our attention to a recent decision of the United States Supreme Court, *Posters 'N' Things, Ltd. v. United States* (1994), 511 U.S. 513, 128 L. Ed. 2d 539, 114 S. Ct. 1747. This case is distinguishable because it interprets a Federal drug statute which defines "drug paraphernalia" differently than does our Drug Act.

The Supreme Court in *Posters 'N' Things* held that a conviction under the Mail Order Drug Paraphernalia Control Act of 1986, 21 U.S.C. § 863 (1988 & Supp. IV 1992) (Control Act), requires a showing of *scienter* (*Posters 'N' Things*, 511 U.S. at 523, 128 L. Ed. 2d at 550, 114 S. Ct. at 1753), but that the *scienter* requirement should be determined according to an objective, rather than subjective, standard. (*Posters 'N' Things*, 511 U.S. at 519, 128 L. Ed. 2d at 547, 114 S. Ct. at 1750.) "A conviction under [the Control Act], then, requires the Government to prove that the defendant knowingly made use of an interstate conveyance as part of a scheme to sell items that he knew were likely to be used with illegal drugs." *Posters 'N' Things*, 511 U.S. at 524, 128 L. Ed. 2d at 551, 114 S. Ct. at 1753-54.

Unlike the Illinois statute at issue in the present matter, the Federal Control Act defines "drug paraphernalia" as *either* an item "primarily intended *or* designed for use" with illicit drugs. (Emphasis added.) (21 U.S.C. § 863(d) (1988 & Supp. IV 1992).) The Drug Act, as we have noted, requires that an item be *both* "peculiar to" *and*

"marketed for" use with drugs to meet the definition of "[d]rug paraphernalia." Ill. Rev. Stat. 1991, ch. 56$^1$/2, par. 2102(d) (now 720 ILCS 600/2(d) (West 1992)).

The Supreme Court in *Posters 'N' Things* based its determination that an objective standard was appropriate under the Federal Control Act, in part, on the difference in language between statutes that define "drug paraphernalia" with "marketed for use" language and those that use "primarily intended" language. The Court acknowledged that it remains appropriate to require a stricter *scienter* standard for convictions under statutes that employ "marketed for" language. The Court in *Posters 'N' Things* noted:

"[T]his Court in *Hoffman Estates* interpreted the arguably parallel phrase 'marketed for use' as describing 'a retailer's *intentional display and marketing of merchandise*' [citation], and thus requiring scienter. On the other hand, there is greater ambiguity in the phrase 'primarily intended ... for use' than in the phrase 'marketed for use.' The term 'primarily intended' could refer to the intent of nondefendants, including manufacturers, distributors, retailers, buyers, or users. Several considerations lead us to conclude that 'primarily intended ... for use' refers to *a product's likely use rather than to the defendant's state of mind*." (Emphasis added.) *Posters 'N' Things*, 511 U.S. at 519, 128 L. Ed. 2d at 548, 114 S. Ct. at 1751.

Given the lack of evidence here concerning the defendants' state of mind (*i.e.*, their intent to market the Dugout boxes and pipes as drug paraphernalia), and the express directive of section 6 of our Drug Act that all reasonable inferences shall be drawn in favor of the legitimacy of an item alleged to be drug paraphernalia, we conclude that the defendants were not proved guilty beyond a reasonable doubt. We, therefore, need not consider the defendants' final two claims on appeal.

Because we find that the evidence presented here was legally insufficient to support a conviction, the constitutional guarantee against double jeopardy prevents the matter from being retried. See *People v. Palmer* (1989), 188 Ill. App. 3d 378, 382, citing *Burks v. United States* (1978), 437 U.S. 1, 18, 57 L. Ed. 2d 1, 14, 98 S. Ct. 2141, 2150-51.

The judgment of the circuit court of Kane County is reversed.

Reversed.

PECCARELLI, J., concurs.

PRESIDING JUSTICE INGLIS, concurring in part and dissenting in part:

The majority opinion reverses defendants' convictions on the ground that the State did not prove beyond a reasonable doubt that defendants possessed the requisite state of mind to "market for use" drug paraphernalia. Although I concur with the holding as to all other issues, I respectfully dissent regarding the finding that the State did not prove that defendants possessed the requisite state of mind. The State, via circumstantial evidence, proved that defendants possessed the requisite mental intent to "market" drug paraphernalia.

The proper standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Sutherland* (1992), 155 Ill. 2d 1, 17.) This standard applies to bench trials. *People v. Marshall* (1993), 256 Ill. App. 3d 310, 322.

The relevant statute defines "[d]rug paraphernalia" as "all equipment, products and materials of any kind which are peculiar to and marketed for use in planting, *** containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body cannabis or a controlled substance." (720 ILCS 600/2(d) (West 1992).) The statute requires the State to prove two elements in order to establish the requisite *scienter*: specifically, that the items at issue are "peculiar to" drug use, and that defendants "marketed" those items as drug paraphernalia. (720 ILCS 600/2(d) (West 1992).) Defendants do not argue that the "Dugout Boxes" were not "peculiar to" drug use. Defendants and the majority focus on the fact the State did not present sufficient evidence to prove that defendants possessed the requisite intent to market the "Dugout Boxes" as drug paraphernalia.

Intent is most commonly proved through the use of circumstantial evidence, and a defendant's intent may be inferred from the surrounding facts and circumstances, including his words and actions. (*People v. Steffens* (1985), 131 Ill. App. 3d 141, 148-49.) If the defendant is aware of the nature of the items sold, he possesses the requisite mental state. (*People v. Crow's Nest, Inc.* (1985), 137 Ill. App. 3d 461, 465.) There is no requirement in the statute that the defendant be the party who actually sells the final product.

The State presented evidence that defendants knew their "Dugout Boxes" were used to smoke "other products." The State also produced evidence that the "Dugout Boxes" were advertised in a

medium which had as its focus the marketing of drug paraphernalia. It was the role of the trier of fact to judge the credibility of the witnesses presented and evaluate the evidence presented by both parties. The State produced sufficient evidence whereby a trier of fact could conclude that defendants were aware of the ultimate use of the "Dugout Boxes."

The majority appear to require the State to prove an overt action on the part of defendants to actually go out and market the drug paraphernalia. I disagree and maintain that the statute encompasses all persons who actively engage in the manufacture of items which are to be utilized as drug paraphernalia, coupled with knowledge of the nature of those products.

Defendants rely on two United States Supreme Court cases in support of their argument. The Supreme Court has interpreted the phrase "marketed for use" to describe a retailer's intentional display and marketing of merchandise. (*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 502, 71 L. Ed. 2d 362, 374, 102 S. Ct. 1186, 1195.) The Court, however, was not interpreting the statute at issue in the case at bar, but rather a village ordinance. The Hoffman Estates ordinance required a party selling drug paraphernalia to obtain a license. (*Hoffman Estates*, 455 U.S. at 491, 71 L. Ed. 2d at 367, 102 S. Ct. at 1189.) The Drug Paraphernalia Control Act (720 ILCS 600/1 *et seq.* (West 1992)) is much broader than the Hoffman Estates ordinance and, therefore, does not preclude defendants from falling within its purview.

Another recent Supreme Court case interpreted the language "marketed for use" in conjunction with the language contained in the Mail Order Drug Paraphernalia Control Act (21 U.S.C. § 863(d) (1988 & Supp. IV 1992)). (*Posters 'N' Things, Ltd. v. United States* (1994), 511 U.S. 513, 128 L. Ed. 2d 539, 114 S. Ct. 1747.) The Court concluded that the language in the Federal statute was broader than the language contained in Hoffman Estate's ordinance and would allow a conviction of a defendant based on the intent of other parties. *Posters*, 511 U.S. at 519, 128 L. Ed. 2d at 548, 114 S. Ct. at 1751.

Nothing, however, in either of these Supreme Court cases or in the majority opinion precludes the conviction of parties who do not directly sell "drug paraphernalia," so long as they had knowledge that the items they were producing would end up being utilized as "drug paraphernalia." Furthermore, the State did not attempt to convict defendants based on the intent of other parties, but based upon defendants' own knowledge as to the nature of the products they manufactured.

When all inferences are viewed in a light most favorable to the prosecution, a rational finder of fact could conclude defendants possessed the requisite mental state. Therefore, defendants' convictions should not be reversed, and I respectfully dissent.