THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EUGENE R. HUGHES, Defendant-Appellant.

Fifth District  No. 5—02—0070

Opinion filed October 6, 2003.—Rehearing denied October 28, 2003.

Daniel M. Kirwan, of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Rod Wolf, State's Attorney, of Harrisburg (Norbert J. Goetten, Stephen E. Norris, and Rebecca E. McCormick, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:
Following a jury trial, the defendant, Eugene R. Hughes, was found

guilty of unlawful possession of drug paraphernalia, unlawful possession of a controlled substance, unlawful possession of a methamphetamine-manufacturing chemical, and unlawful use or possession of weapons by a felon. The defendant was sentenced to 14 years' imprisonment.

On appeal, the defendant challenges (1) the trial court's denial of his motion to quash a warrant and suppress evidence, (2) the sufficiency of the evidence as it pertains to his conviction for unlawful possession of drug paraphernalia, and (3) the sufficiency of the evidence as it pertains to his conviction for unlawful use or possession of weapons by a felon; the defendant also argues (4) that he is entitled to an $895 credit against his fine. For the reasons that follow, we affirm as modified in part and reverse in part, and we remand with directions.

The evidence presented at the defendant's trial, viewed in the light most favorable to the prosecution (see *People v. Miller*, 339 Ill. App. 3d 990, 992-93 (2003)), is as follows. On July 24, 2001, at approximately 10:30 p.m., Officer Morris went to the defendant's residence to serve the defendant with a legal document. Upon arriving at the defendant's residence, Morris went to the front door and knocked on the screen door that was in front of it. Morris did not receive a response, so he opened the screen door to knock on the front door. When he opened the screen door, Morris was met with a strong order of anhydrous ammonia and ether. Based upon his experience, Morris believed that the odor was associated with the manufacturing of methamphetamine.

Morris then walked to the back of the house, where he smelled ether. Morris then looked through a kitchen window, where he observed several glass jars containing a white residue. These observations confirmed Morris's suspicion that methamphetamine was being manufactured at the residence, so he immediately called for police backup. In addition, Morris contacted the Saline County State's Attorney and inquired about a search warrant.

After backup had arrived, Morris left the residence to meet with the State's Attorney. After meeting with the State's Attorney, Morris filled out a complaint for a search warrant. At 11:53 p.m., a search warrant was issued by Judge Stewart.

While Morris was away from the residence, the defendant returned to the residence and encountered police officers waiting outside. The officers informed the defendant that the defendant was not required to stay but was free to leave. The defendant then left his residence. Morris returned to the residence and a search was conducted.

A search of the defendant's residence resulted in the recovery of

numerous items. A tank containing anhydrous ammonia was found in the basement of the home. Three glass jars containing a white residue were found on a kitchen stove. Numerous blister packs of tablets containing pseudoephedrine were found in a dresser drawer in a bedroom. Coffee filters were found in a cardboard box in a bedroom. Blister packs of tablets containing pseudoephedrine and four lithium batteries were found in a Wal-Mart bag in a filing cabinet in the living room. A cigarette lighter containing a clear baggie with methamphetamine in its cap was found on the top of the filing cabinet in the living room. A plastic hose that looked as though there had been a fire around it was found near a closet near the living room. Four empty bottles of Equate antihistamine tablets were found in a kitchen drawer.

Morris testified that based upon his experience and training, he knew that the items described above are the ingredients used in the manufacturing of methamphetamine. Other items found in the residence included scales, syringes, rifle shells, shotgun shells, and handgun ammunition.

At the trial, the defendant testified that he had not been at the residence for a couple of days prior to the search. Further, he testified that he did not know how the items seized by the police had gotten into his residence. The defendant denied his ownership of most of these items. However, the defendant did admit that the ammunition was his.

After hearing the evidence, the jury found the defendant guilty of the charges set forth in the opening paragraph. The defendant does not challenge his convictions for unlawful possession of a controlled substance or unlawful possession of a methamphetamine-manufacturing chemical, except that he argues that the evidence supporting these convictions should have been suppressed. The defendant does not challenge the sufficiency of the evidence to prove his guilt of these charges. We now turn to the arguments that the defendant does raise on appeal.

The first argument raised by the defendant on appeal is that the trial court erred in denying his motion to quash the search warrant and suppress evidence. The defendant claims that the trial court did not have probable cause to issue the search warrant because the facts contained in the complaint for a search warrant signed by Morris did not contain any temporal description. The defendant argues that because the complaint failed to set forth when Morris had observed the alleged criminal activity and it failed to state that the alleged criminal activity was of a continuing nature, probable cause could not be established because there is no way of knowing whether the alleged criminal activity had been observed just a few hours prior to the sign-

510

ing of the complaint or several years prior to the signing of the complaint. The defendant argues that because the complaint for a search warrant failed to show probable cause, the search warrant should be quashed and the evidence suppressed.

In response, the State first argues that the defendant has waived the argument he makes on appeal because this argument was not raised before the trial court. Although the defendant did file in the trial court a motion to quash his arrest and suppress evidence, neither in the motion nor at the motion hearing did the defendant ever make an argument that probable cause was lacking due to the absence of a temporal description in the complaint for a search warrant. As the record reveals, the defendant argued before the trial court that the complaint was insufficient because it failed to allege that Morris was experienced with the odors of anhydrous ammonia and ether and that, accordingly, Morris was not able to determine that these smells were consistent with the manufacturing of methamphetamine.

■ Although the State argues that this issue should be considered waived because the defendant raises it for the first time on appeal, we note that the waiver rule is binding only on the parties and that, in the interests of justice, we may relax the waiver rule and address the issue raised. *People v. Fontana*, 251 Ill. App. 3d 694, 704-05 (1993). We choose to do so in the instant case.

On July 24, 2001, Morris filed the complaint for a search warrant. In the complaint, Morris alleged as follows:

"I, [Morris], was in [the] process of serving private civil papers at the [defendant's] residence at 275 Gibbons Road, Harrisburg, Illinois, and smelled a very strong odor coming from the front door[,] which smell was ether and anhydrous ammonia. I then went to [the] back door of [the] house and smelled [a] strong odor of ether. The odor of ether was coming from every window of the residence. While investigating the strong odor of ether, I observed through [a] window several glass jars sitting upside down on the stove with white residue. There was one large glass jar in the sink with white residue around the mouth of the jar. All of the above information is consistent with the manufacturing of methamphetamine."

The search warrant issued by the circuit court is dated July 24, 2001, with an 11:53 p.m. time of issuance.

■ Probable cause to issue a search warrant exists where the facts set forth in an affidavit would cause a reasonable person to believe that a crime has been committed and evidence of that crime can be found in the place to be searched. *People v. McCoy*, 135 Ill. App. 3d 1059, 1063 (1985). The decision to issue a search warrant is to be based on information contained in sworn statements or affidavits that

are presented to the issuing judge. *McCoy*, 135 Ill. App. 3d at 1064. The issuing judge is then to make a practical, commonsense decision given all the circumstances before him or her. *McCoy*, 135 Ill. App. 3d at 1064.

■ In the instant case, the defendant contends that the trial court erred in issuing a search warrant because the complaint did not indicate when the alleged criminal activity had been observed. The law pertaining to search warrants is codified in section 108—3(a) of Illinois's Code of Criminal Procedure of 1963 (725 ILCS 5/108—3(a) (West 2000)). It provides as follows:

> "[U]pon the written complaint of any person under oath or affirmation which states facts sufficient to show probable cause and which particularly describes the place or person, or both, to be searched and the things to be seized, any judge may issue a search warrant ***." 725 ILCS 5/108—3(a) (West 2000).

We note that although the statute specifically requires that the complaint include a description of the place or person to be searched and the things to be seized, there is no specific requirement that the complaint reveal when the alleged criminal activity was observed. However, we acknowledge that the question of when the alleged criminal activity was observed plays an important role in the determination of probable cause. *People v. Rehkopf*, 153 Ill. App. 3d 819, 822 (1987).

■ The time at which a search warrant is issued should not be too remote from the time the crime was observed. *People v. Sellers*, 237 Ill. App. 3d 545, 548 (1992). Probable cause may not exist when an extended period of time has transpired between the observance of the alleged crime and the filing of a complaint seeking a search warrant. See *Rehkopf*, 153 Ill. App. 3d at 823 (finding no probable cause where a warrant was issued 13 months after the crime).

■ In the instant case, the defendant contends that where a written complaint fails to contain any temporal description, probable cause cannot be established because the trial court is bound to consider only the four corners of the complaint and the issuing judge has no way of determining when the alleged criminal activity was observed. We disagree. As the State points out, this court has recently rejected a claim that an issuing judge is bound to a "rigid, four-corners approach" when reviewing a complaint for a search warrant. *People v. Ward*, 326 Ill. App. 3d 897, 904 (2002). Although the better practice would be to include all pertinent information within the four corners of a complaint for a search warrant, an issuing judge is able to go outside the four corners of the document in order to obtain additional facts supporting probable cause. See *Ward*, 326 Ill. App. 3d at 904

(holding that the issuing judge may go outside the four corners of the document in order to obtain sufficient indicia of the reliability of the cooperating witness). Because the record in the case at bar reveals that Morris had observed the alleged criminal activity less than a couple of hours before the search warrant was issued and because we presume that the trial court properly follows the law, especially when there is nothing in the record indicating otherwise, we reject the defendant's argument that the search warrant must be quashed and that the evidence recovered from that warrant must be suppressed.

Based on Morris's testimony at the trial, it is clear that the search warrant was obtained within just a few hours of his observation of the alleged criminal activity. Although this evidence was set forth at the defendant's trial, it was not brought out at the motion hearing, most likely because the alleged temporal deficiency of the complaint for a search warrant had not yet been raised by the defendant. Had the defendant raised the issue at that time, Morris would have had the opportunity to testify concerning whether or not this information had been revealed to the issuing judge at the time the complaint for a search warrant was presented. We must presume that it was, based on the fact that the search warrant was issued late in the evening (the warrant was issued at 11:53 p.m.) and because we presume that a trial judge knows and follows the law unless the record indicates otherwise (*People v. Dauer*, 293 Ill. App. 3d 329, 333 (1997)). There is nothing in the record to indicate otherwise. Accordingly, based upon the facts in the instant case, we reject the defendant's claim that the trial court erred in denying his motion to quash the search warrant and suppress evidence.

The second argument raised by the defendant on appeal challenges the sufficiency of the evidence as it pertains to his conviction for unlawful possession of drug paraphernalia. On appeal, the defendant contends that none of the items found at his residence fall within the definition of "drug paraphernalia" as defined by section 2(d) of the Drug Paraphernalia Control Act (Act) (720 ILCS 600/2(d) (West 2000)). We agree.

■ The crime of unlawful possession of drug paraphernalia is codified in section 3.5 of the Act (720 ILCS 600/3.5 (West 2000)). It provides, "A person who knowingly possesses an item of drug paraphernalia with the intent to use it in ingesting, inhaling, or otherwise introducing cannabis or a controlled substance into the human body, or in preparing cannabis or a controlled substance for that use, is guilty of a Class A misdemeanor ***." 720 ILCS 600/3.5 (West 2000). "Drug paraphernalia" is defined in section 2(d) of the Act as follows:

" 'Drug paraphernalia' means all equipment, products[,] and materials of any kind which are *peculiar to and marketed for use* in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling[,] or otherwise introducing into the human body cannabis or a controlled substance in violation of the 'Cannabis Control Act' [(720 ILCS 550/1 *et seq.* (West 2000))] or the 'Illinois Controlled Substances Act' [(720 ILCS 570/100 *et seq.* (West 2000))]." (Emphasis added.) 720 ILCS 600/ 2(d) (West 2000).

Sections 2(d)(1) through 2(d)(6) then list a variety of items that fall within the scope of this definition. 720 ILCS 600/2(d)(1) through (d)(6) (West 2000). These items include isomerization devices peculiar to and marketed for use in increasing the potency of any species of plant that is cannabis or a controlled substance and diluents and adulterants peculiar to and marketed for cutting cannabis or a controlled substance. 720 ILCS 600/2(d)(2), (d)(4) (West 2000). Also included are water pipes, miniature cocaine pipes, miniature cocaine spoons, and bongs, peculiar to and marketed for use in ingesting, inhaling, or otherwise introducing cannabis, cocaine, hashish, or hashish oil into the human body. 720 ILCS 600/2(d)(5)(A), (d)(5)(D), (d)(5)(I) (West 2000).

On appeal, the defendant claims that none of the items found in his residence are included in the list of items set forth by the statute and that they are not "peculiar to and marketed for use in" introducing a controlled substance into the body. Accordingly, the defendant argues that his conviction must be reversed because there was no evidence presented at his trial of drug paraphernalia as it is defined by the Act.

The clear language of the Act requires the State to prove at the trial that the alleged items of "drug paraphernalia" possessed by the defendant are "peculiar to" *and* "marketed for use in" growing, producing, storing, or ingesting cannabis or a controlled substance. *People v. Reeves*, 326 Ill. App. 3d 1083, 1086 (2002). Because the phrases "peculiar to" and "marketed for use" are set out in the conjunctive, the State must prove that the items recovered are both "marketed for use" with drugs and "peculiar to" the use of drugs, and the absence of either renders the item outside the scope of the Act. *Reeves*, 326 Ill. App. 3d at 1086 (finding that a defendant's homemade crack pipe was not drug paraphernalia under the Act because, although it was peculiar to the use of drugs, it was homemade and it did not fall into the category of "marketed for use" with drugs).

■ In the instant case, the items recovered from the defendant's residence included scales, syringes, coffee filters, blister packs of tablets containing pseudoephedrine, lithium batteries, and a plastic hose. Morris testified that these items could be found at a local department store. Although Morris testified that these ingredients are used in the production of methamphetamine, he did not testify that any of these ingredients are primarily used for drug-related purposes or that any of these items are marketed for drug use. In fact, there was no evidence presented by the State supporting that notion.

"Peculiar to" has been defined as "primarily." *People v. Ziegler*, 139 Ill. App. 3d 1088, 1091 (1986). Simply because a product can be used with drugs does not indicate that the product is primarily for drug use. *People v. Feld*, 267 Ill. App. 3d 56, 63 (1994). "By defining drug paraphernalia as that which is 'peculiar to and marketed for use' with drugs, the legislature sought to remove any uncertainty as to what constitutes drug paraphernalia by defining it with reference to the seller's marketing intentions." *People v. Monroe*, 118 Ill. 2d 298, 303 (1987). The legislative intent is set forth in section 6: "This Act is intended to be used solely for the suppression of the commercial traffic in and possession of items that *** are clearly and beyond a reasonable doubt marketed for the illegal and unlawful use of cannabis or controlled substances." 720 ILCS 600/6 (West 2000). It continues, "[A]ll reasonable and common-sense inferences shall be drawn *in favor of the legitimacy* of any transaction or item." (Emphasis added.) 720 ILCS 600/6 (West 2000). Unlike many criminal statutes, this statute draws a strong presumption particularly favorable to defendants. *Feld*, 267 Ill. App. 3d at 61.

Based upon our review of the evidence, we agree with the defendant that the State failed to prove beyond a reasonable doubt that any of the items recovered at the defendant's home constitute drug paraphernalia as defined by the Act. No evidence was presented that any of the items were peculiar to or marketed for use in the creation, distribution, or consumption of drugs. The list of what constitutes drug paraphernalia, contained in sections 2(d)(1) through 2(d)(6) of the Act, although not all-inclusive, includes items clearly distinguishable from the type of items found in the defendant's residence and evinces the stated intent by the legislature to limit the items encompassed by the Act. Accordingly, we reverse the defendant's conviction for unlawful possession of drug paraphernalia.

The third argument raised by the defendant on appeal challenges the sufficiency of the evidence as it pertains to his conviction for unlawful use or possession of weapons by a felon. The defendant argues that there was insufficient evidence upon which the jury could

have convicted him of unlawful use or possession of weapons by a felon because the jury was instructed that it could not use the evidence of his prior convictions as substantive evidence but only as it pertained to the credibility of the defendant. Accordingly, the defendant argues that because the jury is presumed to have followed the instructions and was instructed that it could not consider the defendant's prior convictions as substantive evidence, the evidence was insufficient to support a conviction for unlawful use or possession of weapons by a felon.

In support of his argument, the defendant cites the Illinois Supreme Court's decision in *People v. Edwards*, 63 Ill. 2d 134 (1976). In *Edwards*, the defendant was charged with unlawful use of weapons by a felon. During the trial, the defendant stipulated to a previous burglary conviction. *Edwards*, 63 Ill. 2d at 137. After the presentation of the evidence, the jury was instructed that the evidence of the defendant's prior conviction could only be considered by the jury in determining the defendant's credibility as a witness. *Edwards*, 63 Ill. 2d at 140. The jury found the defendant guilty of unlawful use of weapons by a felon.

On review, the supreme court reversed the conviction because the jury had been instructed that the evidence of the defendant's prior conviction could only be considered in assessing the defendant's credibility. The supreme court reasoned that the jury could not have made the determination that all the elements of the charge of felonious use of a weapon had been proven beyond a reasonable doubt, due to the instruction. *Edwards*, 63 Ill. 2d at 140-41. In the instant case, the defendant relies on *Edwards* and contends that his conviction for unlawful use of weapons by a felon must be reversed. Because we believe the circumstances in the instant case differ from those in *Edwards*, we disagree.

In the instant case, as in *Edwards*, there is no dispute that the defendant had a prior felony conviction, and the parties stipulated to the prior conviction. In fact, in the instant case, the defendant testified that he was a convicted felon. However, what differentiates this case from *Edwards* is that in the instant case the jury was instructed on the elements of unlawful possession of a weapon by a felon and was also instructed that, based on the stipulation between the parties, the State did not have to prove that the defendant was a felon for purposes of this offense. This additional instruction was absent from the *Edwards* case.

After the presentation of the evidence, the jury was instructed as follows:

"A person commits the offense of unlawful possession of a

weapon by a felon when he, having previously been convicted of a felony, knowingly possesses firearm ammunition. To sustain the charge of unlawful possession of a weapon by a felon, the State must prove the following propositions: That the defendant knowingly possessed firearm ammunition, and second proposition that the defendant had previously been convicted of a felony.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty. If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

The parties have stipulated that the defendant has previously— been previously convicted of a felony."

During the trial, immediately following the parties' stipulation to the fact that the defendant was a convicted felon, the trial court instructed the jury as follows:

"[W]hat this means, Ladies and Gentlemen, is that since the parties agree to it, that's a matter that does not have to be proven since the defense and the State agree to that fact."

Accordingly, we believe that although the jury was instructed, "Evidence of the defendant's previous conviction of an offense may be considered by you only as it may affect his believability as a witness and must not be considered by you as evidence of his guilt in the offense for which he is charged," in light of the other instructions given by the trial court that the "prior conviction" of a felon in possession had already been proven, the jury could have found the defendant guilty of unlawful use or possession of weapons by a felon beyond a reasonable doubt. Accordingly, we reject the third argument raised by the defendant on appeal.

■ The fourth and final argument raised by the defendant on appeal is whether he is entitled to a credit of $895 against his fine. See 725 ILCS 5/110—14 (West 2002). The State concedes this argument. Accordingly, we order that the defendant receive a $895 credit against his fine.

For the foregoing reasons, the judgment of the trial court is affirmed as modified in part and reversed in part, and we remand with directions to grant the defendant a credit of $895 against his fine.

Affirmed as modified in part and reversed in part; cause remanded with directions.

KUEHN and DONOVAN, JJ., concur.