THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONNIE BOSTIC, Defendant-Appellant.

Fourth District    No. 4—03—0132

Opinion filed May 19, 2004.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Tony Lee, State's Attorney, of Paxton (Norbert J. Goetten, Robert J. Biderman, and Thomas R. Ewick, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

In February 2003, after a stipulated bench trial, the judge found defendant, Ronnie Bostic, guilty of unlawful possession of drug paraphernalia in violation of section 3.5 of the Drug Paraphernalia Control Act (Act) (720 ILCS 600/1 through 7 (West 2002)). The trial court sentenced him to one year's probation.

Bostic appeals, arguing (1) the State failed to prove the glass pipe found in his car was "marketed for use" as drug paraphernalia, (2) the trial court erred by denying his motion to suppress because the search of his car was not a valid inventory search, and (3) defendant is entitled to a *per-diem* credit against his fines. We reverse.

## I. BACKGROUND

The facts in this case are undisputed. In April 2002, Officer Travis Brown of the Paxton police department stopped Bostic's vehicle after observing the vehicle had an obstructed rearview mirror. Bostic was driving the car, and he was the only person in the automobile. Officer Brown asked to see Bostic's driver's license. Bostic told Officer Brown his license had been suspended. Officer Brown ordered Bostic out of the car, handcuffed him, and placed him in the squad car. Officer Brown then confirmed Bostic did not have a valid Illinois driver's license. Officer Brown placed Bostic under arrest and called for a tow. According to Officer Brown, the vehicle had to be towed because no one else was available to drive the vehicle and it could not be legally parked where it was. Officer Brown then asked Bostic if the vehicle contained anything illegal. Bostic responded a marijuana pipe might be under the driver's seat of the vehicle. Prior to leaving the scene, Officer Brown conducted an inventory search of the vehicle and discovered a "dark-colored glass pipe" under the driver's seat.

Bostic was charged for unlawful possession of drug paraphernalia pursuant to section 3.5 of the Act. In September 2002, Bostic filed a motion to suppress the evidence found in his car. At the hearing on the motion, Officer Brown admitted he did not inform Bostic of his rights against self-incrimination before asking him if the vehicle contained anything illegal. In addition, Officer Brown testified Bostic did not give him specific permission to search the vehicle. Officer Brown also testified it was standard procedure to take an inventory of the contents of a vehicle if it had to be towed. Bostic argued the evidence found in the vehicle should be suppressed. The trial court denied the motion, ruling the inevitable-discovery rule applied because of the inventory search Officer Brown testified he would have conducted.

In February 2003, a stipulated bench trial was held. The sole issue raised by the defense was whether the glass pipe was "drug paraphernalia" as defined by the Act. Bostic argued he was not guilty because no evidence showed the pipe was "marketed for use" as drug paraphernalia as the Act required. The defense and prosecution stipulated to the evidence presented at the suppression hearing for purposes of the trial. Both parties also stipulated Officer Brown would testify Bostic told Officer Brown the pipe was used to smoke marijuana and a field test on the burn around the pipe was positive for marijuana. In addition, both parties stipulated Officer Brown would testify based on his experience the pipe was an item used and manufactured to smoke marijuana. Both parties also stipulated the prosecution did not have any evidence showing the purpose for which the glass pipe was marketed. Based on the stipulated evidence, the trial court found Bostic guilty.

This appeal followed.

## II. ANALYSIS

On appeal, Bostic argued the trial court's judgment should be reversed because (1) the State failed to prove the glass pipe was "marketed for use" as drug paraphernalia as it is required to do and, therefore, did not prove its case under section 3.5 of the Act and (2) the glass pipe should have been suppressed as the fruit of an illegal search of his vehicle. In addition, Bostic argued he is entitled to *per-diem* credit against his fines. The State argues the court correctly held the prosecution proved its case and the search was legal. The State concedes Bostic is entitled to a $5 credit against his fine.

We first address Bostic's argument the State failed to prove its case under section 3.5 of the Act because it did not introduce any evidence the glass pipe was "marketed for use" as drug paraphernalia.

Ordinarily, when a defendant argues the State failed to prove him guilty beyond a reasonable doubt, a reviewing court will analyze the evidence in the light most favorable to the prosecution and determine if any rational trier of fact could have found the defendant guilty. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985). However, in this case, the issue is whether the trial court misinterpreted the Act. "Because the interpretation of a statute is a question of law, our review is *de novo.*" *People v. Reeves*, 326 Ill. App. 3d 1083, 1084, 762 N.E.2d 1124, 1125 (2002).

In April 2002, when Officer Brown arrested Bostic, section 3.5 of the Act stated:

> "A person who knowingly possesses an item of drug paraphernalia with the intent to use it in ingesting, inhaling, or otherwise introducing cannabis or a controlled substance into the human body, or in preparing cannabis or a controlled substance for that use, is guilty of a Class A misdemeanor for which the court shall impose a minimum fine of $750 in addition to any other penalty prescribed for a Class A misdemeanor." 720 ILCS 600/3.5(a) (West 2002).

According to the Act:

> " 'Drug paraphernalia' means all equipment, products[,] and materials of any kind which are *peculiar to and marketed for use in* planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, *ingesting, inhaling*[,] *or otherwise introducing into the human body cannabis or a controlled substance* in violation of the 'Cannabis Control Act' or the 'Illinois Controlled Substances Act'." (Emphasis added.) 720 ILCS 600/2(d) (West 2002).

We have already ruled on this issue in *Reeves*. In *Reeves*, 326 Ill. App. 3d at 1084, 762 N.E.2d at 1125, the defendant was found guilty of possessing drug paraphernalia, a crack pipe. However, in reversing the trial court's decision, we stated the following:

> "Under section 3.5, it is not enough to possess an item with the intent of using it to ingest a controlled substance. Under section 3.5, the item possessed must be 'drug paraphernalia.' 'Drug paraphernalia' is defined as 'all equipment, products[,] and materials of any kind which are peculiar to and marketed for use in' growing, producing, storing, or ingesting cannabis or a controlled substance. 720 ILCS 600/2(d) (West 2000).
>
> ***
>
> Where one is charged with possession of drug paraphernalia, it should logically not be necessary to prove that any person marketed

the item with the intent that the item be used to ingest drugs. Rather, it should only be necessary to prove that the person possessed the item 'with the intent to use it in ingesting, inhaling, or otherwise introducing cannabis or a controlled substance into the human body.' 720 ILCS 600/3.5(a) (West 2000). Nevertheless, the definition of 'drug paraphernalia' which applies to sale and delivery cases also applies to possession cases: items 'which are peculiar to and *marketed* for use' (emphasis added) in growing, producing, storing, or ingesting." *Reeves*, 326 Ill. App. 3d at 1085-86, 762 N.E.2d at 1126, quoting 720 ILCS 600/2(d) (West 2000).

In *Reeves*, 326 Ill. App. 3d at 1086, 762 N.E.2d at 1126-27, the defendant did not argue he did not possess the homemade crack pipe, which was the reason for his charge. In addition, no question existed that the crack pipe, a glass tube with a brillo pad as a filtering agent, is " 'peculiar to' " drug use. *Reeves*, 326 Ill. App. 3d at 1086, 762 N.E.2d at 1127. In addition, the presence of cocaine was found on the pipe. *Reeves*, 326 Ill. App. 3d at 1086, 762 N.E.2d at 1127. According to our decision:

"The only question [was] whether the crack pipe was 'marketed' for use with drugs. The plain meaning of the statute seems to be that homemade items which have never been marketed cannot constitute drug paraphernalia. While this may be a legislative oversight, we are not allowed to ignore the clear language of the statute." *Reeves*, 326 Ill. App. 3d at 1086, 762 N.E.2d at 1127.

Since we filed our decision in *Reeves*, the Second and Fifth Districts have followed our reasoning. See *People v. Harrell*, 342 Ill. App. 3d 904, 911, 795 N.E.2d 1022, 1027 (2003) (Second District, reversing conviction "although [the] defendant admitted that he used the pipe to smoke cocaine, there was no evidence about the pipe itself and whether it was marketed specifically for use as a crack pipe"); *People v. Hughes*, 343 Ill. App. 3d 506, 513, 798 N.E.2d 763, 770 (2003) (Fifth District).

The State argues Bostic's conviction should be upheld because merchants have been found in violation of the Act where posted disclaimers represented an awareness of the illicit nature of the items for sale. See *People v. Crow's Nest, Inc.*, 137 Ill. App. 3d 461, 464-65, 484 N.E.2d 907, 909 (1985) (Fifth District); *People v. Ziegler*, 139 Ill. App. 3d 1088, 1091-92, 488 N.E.2d 310, 312 (1986) (Third District). They also argue the glass pipe seized in this case is similar to the items listed in section 2(d) of the Act.

Both *Crow's Nest* and *Ziegler* are distinguishable from the case at bar. In *Crow's Nest*, 137 Ill. App. 3d at 462, 484 N.E.2d at 907-08, the defendant was enjoined from further sales of drug paraphernalia. The defendant was involved in the wholesaling and retailing of tobacco and

tobacco-accessory items. *Crow's Nest*, 137 Ill. App. 3d at 462-63, 484 N.E.2d at 908. The appellate court found the trial court's findings that the defendant was marketing items for use with controlled substances were supported by the record. *Crow's Nest*, 137 Ill. App. 3d at 464, 484 N.E.2d at 909. The defendant had posted signs in its store stating the items should not be used with controlled substances and required its customers to sign statements of intent. *Crow's Nest*, 137 Ill. App. 3d at 464, 484 N.E.2d at 909. The appellate court found "[s]uch disclaimers by the defendant represent his awareness of the nature of the items sold and cannot relieve the defendant from the responsibility for their sale." *Crow's Nest*, 137 Ill. App. 3d at 465, 484 N.E.2d at 909.

In *Ziegler*, 139 Ill. App. 3d at 1089, 488 N.E.2d at 311, the defendants were also enjoined from continuing their mail-order business because it was a public nuisance as defined by section 3 of the Act. The defendants argued the items they were selling were not being "marketed for use" with illegal drugs. *Ziegler*, 139 Ill. App. 3d at 1091, 488 N.E.2d at 312. As in *Crow's Nest*, the defendants in *Ziegler*, 139 Ill. App. 3d at 1091, 488 N.E.2d at 312, attempted to rely on disclaimers in their catalogs stating the products were intended only to be used with "tobacco and legal smoking herbs." The appellate court found the disclaimers represented an awareness of the nature of the products the defendant was selling. *Ziegler*, 139 Ill. App. 3d at 1091-92, 488 N.E.2d at 312. In addition, the court found "the sincerity of the disclaimers is subject to doubt when the pipes and other items are sold under trade names which incorporate slang identified with the illegal drug trade." *Ziegler*, 139 Ill. App. 3d at 1092, 488 N.E.2d at 312.

In this case, unlike in *Crow's Nest* and *Ziegler*, the State did not introduce any evidence regarding the purpose for which the glass pipe was marketed. In fact, at the bench trial, the State conceded it could not introduce any evidence concerning the purpose for which the glass pipe was marketed.

While we agree the glass pipe is similar to some of the items listed in section 2(d) of the Act, we cannot affirm a conviction for possession of drug paraphernalia under the Act without evidence the item was "marketed for use" with a controlled substance. As we stated in *Reeves*, it should not logically be necessary to prove the item was marketed to be used to ingest drugs. However, according to the Act when Bostic was arrested, the "definition of 'drug paraphernalia' which applies to sale and delivery cases also applies to possession cases: items 'which are peculiar to and *marketed* for use' (emphasis added) in growing, producing, storing, or ingesting. 720 ILCS 600/2(d) (West 2000)." *Reeves*, 326 Ill. App. 3d at 1086, 762 N.E.2d at 1126.

Even though Bostic admitted to Officer Brown he used the pipe to smoke marijuana and the field test for cannabis on a burn around the pipe was positive, the lack of evidence showing the pipe was "marketed for use" with a controlled substance is fatal to the State's case under the Act as it was written at the time of Bostic's arrest.

We note Public Act 93—526, which became effective on August 12, 2003, amended section 2(d) of the Act by replacing the "peculiar to and marketed for use" language at issue in this case with language reading "intended to be used unlawfully." Pub. Act 93—526, eff. August 12, 2003 (2003 Ill. Legis. Serv. 2620 (West 2003)), amending 720 ILCS 600/2 (West 2002). We must apply the law as it was written at the time of Bostic's arrest.

As a result of our prior discussion of the Act as it was written at the time of Bostic's arrest, we need not address whether the trial court erred in denying Bostic's motion to suppress the evidence found in the search of Bostic's car because the only evidence found was the glass pipe.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

STEIGMANN and McCULLOUGH, JJ., concur.