# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Easley*, 2012 IL App (1st) 110023

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER EASLEY, Defendant-Appellant. |
| District & No. | First District, Second Division <br> Docket No. 1-11-0023 |
| Filed | December 24, 2012 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's Class 2 felony sentence for unlawful use of a weapon by a felon was vacated and the cause was remanded with directions to sentence defendant to between 2 and 10 years, the special Class 3 felony range for the offense, since the State failed to state its intention to impose an enhanced sentence based on defendant's prior conviction for unlawful use of a weapon. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-888; the Hon. Jorge Luis Alonso, Judge, presiding. |
| Judgment | Affirmed in part, and vacated in part; cause remanded with directions. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Levi S. Harris, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, and Mari R. Hatzenbuehler, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE HARRIS delivered the judgment of the court, with opinion.

Justices Quinn and Connors concurred in the judgment and opinion.


**OPINION**

¶ 1     Defendant, Christopher Easley, appeals his conviction after a bench trial of unlawful use of a weapon (UUW) by a felon and his sentence of nine years' imprisonment. On appeal, Easley contends (1) he was subjected to improper double enhancement where his prior felony conviction of UUW was used both as an element of his current offense of UUW and used by the trial court to impose a harsher sentence; and (2) the trial court abused its discretion in sentencing him where it failed to give proper consideration to mitigating factors such as his employment, education, family circumstances and relationships, lack of violent criminal history and remorse. For the following reasons, we affirm Easley's conviction for unlawful use of a weapon by a felon, reduce the classification of this conviction from a Class 2 to a Class 3 felony, and remand for a new sentencing hearing.

¶ 2                                  JURISDICTION

¶ 3     The trial court sentenced Easley on December 7, 2010. He filed a notice of appeal on December 7, 2010. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 603 and 606, governing appeals from a final judgment of conviction in a criminal case entered below. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 603 (eff. Oct. 1, 2010); R. 606 (eff. Mar. 20, 2009).

¶ 4                                  BACKGROUND

¶ 5     Easley was charged in a multicount indictment following an incident that occurred on December 18, 2005. Count I charged him with aggravated unlawful use of a firearm, counts II and III charged unlawful use of a weapon by a felon in violation of section 24-1.1(a) of the Criminal Code of 1961 (Code) (720 ILCS 5/24-1.1(a) (West 2008)), and counts IV through VII charged aggravated unlawful use of a weapon.

¶ 6     At the bench trial, Officer Joseph Watson testified that he was working undercover

conducting narcotics surveillance around 925 East 65th Street in Chicago, Illinois, on December 18, 2005. He was alone in a covert vehicle. Around 11:45 a.m., he observed Easley exit a gray Nissan. Easley was wearing all black clothing with tan boots and his hair was in braids. As Easley walked past the officer's car, he pulled out a weapon from his right coat pocket and started shooting at and running toward an individual walking eastbound. The individual grabbed his side and ran away. After firing six shots, Easley returned to the gray Nissan. Officer Watson radioed his team that shots had been fired and he gave a description of Easley whom he observed enter the front passenger side of the Nissan. Once the car drove half a block, Officer Watson began to follow the vehicle.

¶ 7    Officer Brian Humpich testified that he was one of the narcotics team members and he was also in an unmarked vehicle. He was about two blocks from Officer Watson when he heard him broadcast about a shooting. Officer Watson described the shooter as wearing a black coat with black jeans and beige boots. He also relayed that the offender got into the front passenger side of a gray Nissan and the direction in which the car was traveling. Officer Humpich observed a car matching this description turn a corner and he followed Officer Watson's vehicle with his lights and sirens activated. After the Nissan traveled four or five blocks, it stopped and Easley and another passenger exited and began to run. The other exiting passenger, later identified as Marshon Jackson, was riding in the backseat behind the driver. The Nissan stopped in front of Officer Watson's car. Officer Watson stopped and stayed with the driver and a woman passenger who was seated in the back on the passenger side. Officer Watson admitted that although he did not speak with the victim, in his police report he checked a box indicating that the victim had been tested for sobriety and had been drinking.

¶ 8    Officer Humpich observed two other officers, Sergeant Roman and Officer Utreras, chase after Easley and Jackson. He lost sight of them for two or three seconds but then he saw Jackson hop a fence and run up some stairs. Officer Humpich placed Jackson under arrest.

¶ 9    Officer Utreras testified that he was part of the narcotics team on December 18, 2005, when he heard a call over the radio that a black male fired shots at another individual and the offender had jumped into a gray Nissan heading eastbound on 65th Street. Officer Utreras spotted the vehicle and followed behind Officers Watson and Humpich. He then saw Easley exit the Nissan and run. He described Easley as wearing dark clothes with tan boots. He was also wearing a skull cap. Officer Utreras identified himself as a police officer and Easley stopped running. As Officer Utreras apprehended him, Easley stated, "I didn't shoot nobody. I just picked up the gun." Officer Utreras testified that he did not ask Easley about the shooting. Upon performing a custodial search of Easley, Officer Utreras recovered a .38-caliber handgun from his right coat pocket. The handgun contained six spent shell casings. Officer Utreras acknowledged that he did not go back to the scene to look for evidence, did not administer a gun residue test or submit the gun for fingerprint examination.

¶ 10    The parties stipulated that Easley had a prior conviction for unlawful use of a weapon by a felon under case number 06 CR 8260. The State rested and Easley made a motion for a directed finding. The trial court found Easley not guilty as to counts V and VII and denied his motion as to the remaining counts.

¶ 11    Easley testified that on December 18, 2008, he met with Carey Williams so that he could drive Easley to his sister's mother's house for Christmas shopping money. Williams' girlfriend and another male were also in the car. That day, Easley was wearing a black jacket, black shirt, jeans, and tan boots. However, he did not wear a skull cap because he just had his hair done for the holidays.

¶ 12    Easley stated that around 65th Street Williams stopped the car, got out, and started shooting and chasing another individual. Williams then got back in the car and drove away. Easley stated that he stayed in the car because he was afraid the individual would return to shoot at them. He stated that he did not have a gun nor did he ever touch a gun. Easley noticed that other cars were chasing them but he did not know they were police cars because they were unmarked. Williams stopped the car and Easley immediately got out with his hands in the air. He stated that Officer Utreras had his gun out and kicked snow in his face. Easley told the officer that he "ain't do it. I ain't do nothing." Easley admitted that he had a prior conviction for UUW. He testified that he never told the police that he saw Williams with the gun and that Williams shot the gun because "I did not have nothing to say to the police."

¶ 13    On cross-examination, Easley admitted he was wearing a black jacket, black T-shirt, jeans, a white and blue jacket and tan boots on that night. He claimed the police lied when they stated that they recovered a gun from his right coat pocket and he was "the victim in the situation." In rebuttal, Officer Utreras stated that he did not kick snow in Easley's face.

¶ 14    The trial court found Easley not guilty as to count I. It found him guilty on counts II, III, IV and VI, and the court merged all counts into count II (UUW).

¶ 15                                                    ANALYSIS

¶ 16    Easley first contends that he was subjected to improper double enhancement where his prior felony conviction of UUW was used both as an element of his current offense of UUW and used by the trial court to impose a harsher sentence. He argues that his sentence is therefore void and asks this court to remand the cause for resentencing. The State responds that Easley has forfeited review of this issue because he failed to object to his sentence during the hearing and did not raise the issue in a posttrial motion. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010) (to preserve a sentencing issue defendant must object at the hearing and include the issue in a motion to reconsider his sentence). Defendant argues that we may review this claim under the plain-error doctrine. The plain-error doctrine is a narrow and limited exception to applying the principle that issues not raised in the trial court are forfeited. *People v. Bannister*, 232 Ill. 2d 52, 65 (2008). To obtain relief under this rule, a defendant must first show that a clear or obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). "In the sentencing context, a defendant must then show either that: (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). We will address defendant's contention that he was subject to an improper double enhancement under the plain-error standard as we do not find the defendant's sentence to be void.

-4-

¶ 17    It is the function of the legislature to determine what is considered criminal conduct and to assign penalties for that conduct. *People v. Taylor*, 102 Ill. 2d 201, 206 (1984). The legislature has the authority to enact statutory provisions which enhance a criminal offense or enhance the applicable range of punishment for an offense. *People v. Thomas*, 171 Ill. 2d 207, 223 (1996). There is, however, a general prohibition against double enhancement as a rule of statutory construction. *People v. Guevara*, 216 Ill. 2d 533, 545 (2005). Double enhancement occurs when a single factor is used both as an element of an offense and to subject defendant to an enhanced penalty. *People v. Powell*, 2012 IL App (1st) 102363, ¶ 8. However, double enhancement is allowed "where the legislature clearly intends to enhance the penalty based upon some aspect of the crime and that intention is clearly expressed." *Id*. The best indicator of whether the legislature intended a double enhancement is the statute itself. *People v. Rissley*, 165 Ill. 2d 364, 390-91 (1995). Although the trial court has discretion to impose a sentence, we review this issue *de novo* since it involves a question of law. *People v. Chaney*, 379 Ill. App. 3d 524, 527 (2008).

¶ 18    The record shows that Easley was charged with UUW by a felon and sentenced pursuant to sections 24-1.1(a) and (e) of the Code. Section 24-1.1(a) states:

    "(a) It is unlawful for a person to knowingly possess on or about his person *** any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2008).

The prior felony used to convict Easley under this section was his UUW conviction under case number 06 CR 8260. Section 24-1.1(e) states:

    "(e) Sentence. Violation of this Section by a person not confined in a penal institution shall be a Class 3 felony for which the person, if sentenced to a term of imprisonment, shall be sentenced to no less than 2 years and no more than 10 years and any second or subsequent violation shall be a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 14 years. Violation of this Section by a person not confined in a penal institution who has been convicted of a forcible felony *** is a Class 2 felony for which the person shall be sentenced to not less than 3 years and not more than 14 years." 720 ILCS 5/24-1.1(e) (West 2008).

¶ 19    This court in *Powell* addressed the double enhancement concerns associated with sections 24-1.1(a) and (e) of the Code. In *Powell*, the defendant alleged that he was subject to improper double enhancement when the trial court sentenced him as a Class 2 felon pursuant to section 24-1.1(e) using a prior burglary conviction, where the same burglary conviction was used to enhance his UUW conviction under section 24-1.1(a). *Powell*, 2012 IL App (1st) 102363, ¶ 6. The *Powell* court found that the legislature clearly intended "to elevate the class of felony and the resulting penalty upon some aspect of the crime, as here, where the offender has a previous conviction for a forcible felony." *Id*. ¶ 11. It disagreed, however, with the defendant's contention that he was subject to double enhancement. Instead, a violation of section 24-1.1(a) by a person who has been convicted of a forcible felony is elevated from a Class 3 to a Class 2 felony, and the sentence outlined in section 24-1.1(e) prescribes the appropriate Class 2 sentence range of 3 to 14 years in prison. *Id*. ¶¶ 11-

-5-

12. As the court in *Powell* reasoned, "[o]nce defendant was convicted of the Class 2 felony, no further enhancement occurred." *Id.* ¶ 11. By sentencing the defendant according to section 24-1.1(e), the trial court merely imposed the "penalty range established by the legislature for defendant's conduct" rather than "impermissibly enhance[d] defendant's penalty." *Id.* ¶ 12.

¶ 20    Easley argues that *Powell* is distinguishable because it involves a different portion of section 24-1.1(e), the "forcible felony portion" rather than the "second or subsequent portion." This distinction, however, is one of form rather than substance especially where in *Powell* the same forcible felony was used to convict the defendant under section 24-1.1(a) and to sentence him under section 24-1.1(e). In section 24-1.1(e) the legislature deemed both types of convictions Class 2 felonies and assigned the appropriate Class 2 penalties to each. *Powell* is on point and instructive to our determination in the case at bar.

¶ 21    Like the situation in *Powell*, Easley's prior conviction of UUW elevated his current UUW conviction under section 24-1.1(e), which states that "any second or subsequent violation shall be a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 14 years." 720 ILCS 5/24-1.1(e) (West 2008). The trial court sentenced Easley to a Class 2 term of nine years, which is well within the range authorized by the statute. Therefore, Easley's sentence did not constitute an improper second enhancement.

¶ 22    Easley, however, contends that double enhancement did occur here. He cites *People v. Owens*, 377 Ill. App. 3d 302 (2007), *People v. Rankin*, 297 Ill. App. 3d 818 (1998), *People v. Gonzalez*, 151 Ill. 2d 79 (1992), and *People v. Bahena*, 296 Ill. App. 3d 67 (1998), as support. *Owens* involved a charge that was enhanced from a Class 4 to a Class 2 felony, and the trial court further enhanced the defendant's sentence based on the same felony to a Class X sentence. *Owens*, 377 Ill. App. 3d at 305. *Rankin*, *Gonzalez*, and *Bahena* involved a second enhancement resulting from the trial court's imposition of an extended-term sentence under section 5-5-3.2(b)(1) of the Unified Code of Corrections (730 ILCS 5/5-5-3.2(b)(1) (West 2008)). *Rankin*, 297 Ill. App. 3d at 821-22; *Gonzalez*, 151 Ill. 2d at 82; *Bahena*, 296 Ill. App. 3d at 69-70. The trial court did not impose a Class X sentence on Easley, nor did it impose an extended-term sentence under section 5-5-3.2(b)(1). These cases are factually inapposite. We reject Easley's argument that he was subjected to an improper double enhancement.

¶ 23    At oral argument, in response to a question asked by this court, Easley's counsel argued for the first time that the trial court improperly sentenced Easley as a Class 2 offender where the State charged him with a Class 3 offense of unlawful use of a weapon by a felon and did not provide notice that it intended to charge him with an enhanced Class 2 offense, in violation of section 111-3(c) of the Code of Criminal Procedure of 1963 (725 ILCS 5/111-3(c) (West 2008)). This court asked both parties to brief the issue.

¶ 24    Section 111-3(c) states that "[w]hen the State seeks an enhanced sentence because of a prior conviction, the charge shall also state the intention to seek an enhanced sentence and shall state such prior conviction so as to give notice to the defendant." 725 ILCS 5/111-3(c) (West 2008). An enhanced sentence is defined as "a sentence which is increased by a prior conviction from one classification of offense to another higher level classification of offense

-6-

set forth in Section 5-5-1 of the 'Unified Code of Corrections.' " *Id*.

¶ 25    The State argues that as the issue of the applicability of section 111-3(c) was not raised by defendant in the trial court but, rather, was raised by this court during the appeal, defendant must show that he was prejudiced in the preparation of his defense. In making this argument, the State relies upon three decisions of our supreme court wherein the court rejected the defendant's attacks on charging instruments where they were first raised in a court of review, rather than in the trial court.

¶ 26    In *People v. Gilmore*, 63 Ill. 2d 23 (1976), the court held that the failure of an indictment to name the payee whose name was on a fraudulent check delivered by defendant did not prejudice the defendant. The court held that the indictment was sufficiently specific to apprise defendant of the acts he was charged with and a conviction would bar any future prosecution arising out of the same conduct. In the instant case, defendant does not assert that the charging instrument failed to apprise him of which specific acts he allegedly committed were illegal. The defendant only argues that the indictment in the instant case did not put him on notice that the State was seeking to punish him as a Class 2 offender rather than a Class 3 offender, as is required by section 111-3(c). Consequently, we find the holding in *Gilmore* to be inapposite.

¶ 27    In *People v. Davis*, 217 Ill. 2d 472 (2005), the court held that a defendant was not prejudiced in preparing his defense where the defendant was charged with first degree murder for beating his seven-week-old baby to death. The trial court granted the defendant's request that the jury be instructed on involuntary manslaughter. The defendant appealed the guilty verdict of involuntary manslaughter, arguing that he should only have been convicted of a Class 3 felony where his indictment did not allege that the victim was a family member of the defendant's. This factor raised the classification of the offense to a Class 2 felony. The court rejected the defendant's argument, holding he did not show that he was prejudiced in preparing his defense where the evidence was uncontroverted that defendant was the father of the victim and the trial court advised the defendant he could be sentenced as a Class 2 felon if he was convicted of the involuntary manslaughter charge. In *Davis*, the defendant was charged with first degree murder and it was he who requested that the jury be instructed on involuntary manslaughter. Consequently, there was no issue of the defendant being put on notice prior to trial that his status as a family member would increase the potential penalty for involuntary manslaughter from a Class 3 felony to a Class 2 felony. *Davis* does not help the State's position.

¶ 28    In *People v. Rowell*, 229 Ill. 2d 82 (2008), the court held:

"A defendant has a fundamental right, as set forth in section 111-3 of the Code of Criminal Procedure of 1963 [citation], to be informed of the nature and cause of criminal accusations made against him. [Citation.] Section 111-3(a)(3) provides that the charging instrument must set forth the nature and elements of the offense charged. ***

If an indictment or information is challenged before trial in a pretrial motion, the indictment or information must strictly comply with the pleading requirements of section 111-3. [Citations.] If the indictment or information does not strictly comply with the pleading requirements of section 111-3, the proper remedy is dismissal. [Citation.]

-7-

When an indictment or information is attacked for the first time posttrial, however, case law and statute require a defendant to show that he was prejudiced in the preparation of his defense." *People v. Rowell*, 229 Ill. 2d at 92-93.

¶ 29        In *Rowell*, the information charged the defendant with the retail theft of property having a real value exceeding $150. 720 ILCS 5/16A-3(a) (West 2004). The defendant stole 15 video games from his employer's store. The games were individually priced between $18 and $45. Section 111-4(c) of the Code of Criminal Procedure provides that if two or more acts violate the retail theft statute, those acts or transactions "may be charged as a single offense in a single count of the same indictment, information or complaint, if such acts or transactions by one or more defendants are in furtherance of a single intention and design." 725 ILCS 5/111-4(c) (West 2004). In *Rowell*, the parties agreed that the information did not allege that the acts were in furtherance of a single intention and design. The supreme court held that this failure prejudiced the defendant. The court then considered whether the State had proved beyond a reasonable doubt that defendant acted in furtherance of a single transaction and design. After finding that the State had failed to do so, the court reduced the defendant's conviction from felony retail theft to misdemeanor retail theft and remanded the case to the trial court for resentencing on the lesser charge. The court pointed out that " 'state and federal appellate courts have long exercised the power to reverse a conviction while at the same time ordering the entry of a judgment on a lesser-included offense.' " *Rowell*, 229 Ill. 2d at 97 (quoting *People v. Knaff*, 196 Ill. 2d 460, 477-78 (2001)). We find that the holding in *Rowell* supports defendant's position and our decision to address defendant's argument based on section 111-3(c).

¶ 30        Defendant's argument really addresses whether his sentence was proper. Sentencing issues are excepted from the doctrine of waiver when they affect a defendant's substantial rights. *People v. Carmichael*, 343 Ill. App. 3d 855, 859 (2003). In *Carmichael*, this court found that the defendant's contention that the offense of which he was convicted was improperly enhanced from a Class 3 felony to a Class 2 felony implicated substantial rights justifying review of the issue. The State argues that the defendant's sentence of nine years imprisonment under section 24-1.1(e) is still within the permissible sentencing range for a Class 3 conviction, which is "no less than 2 years and no more than 10 years." However, "even if a sentence imposed under a wrong sentencing range fits within a correct sentencing range, the sentence must be vacated due to the trial court's reliance on the wrong sentencing range in imposing the sentence." (Internal quotation marks omitted.) *People v. Owens*, 377 Ill. App. 3d 302, 305-06 (2007). Section 24-1.1(e) provides that the sentencing range for a Class 2 conviction is "not less than 3 years and not more than 14 years."

¶ 31        Finally, the State cites *People v. Jackson*, 269 Ill. App. 3d 851 (1995), for its holding " 'section 24-1.1 is not merely an "upgraded" version of the offense created by section 24-1; rather, it is a separate, distinct offense. The fact that the offender must be a convicted felon is merely an element of the crime, it is not an "enhancement" provision. Defendant's contention that his crime was a felony solely because it was "upgraded" or "enhanced" is therefore incorrect.' *** (People v. Gonzalez*, 152 Ill. 2d [79,] 87-88 [(1992)].) Thus, because the State was not seeking an enhanced sentence under section 24-1.1, section 111-3(c) does not apply in the instant matter." (Emphasis omitted.) *People v. Jackson*, 269 Ill.

App. 3d at 855. We note that at the time both *Gonzalez* and *Jackson* were decided, section 24-1.1(e) provided for only a Class 3 sentence.

¶ 32    In the instant case, the defendant does not argue that his conviction under section 24-1.1 was "enhanced" from section 24-1. Rather, defendant argues that his Class 2 conviction under section 24-1.1 is "enhanced" from the Class 3 version of the offense found in section 24-1.1. Therefore, the defendant argues the State was required to state its intention to seek an enhanced sentence and give notice of the prior conviction to the defendant. The parties agree that the State gave defendant notice of the prior offense it was relying on, but it did not state its intention to seek an enhanced sentence. In *People v. Grihan*, 399 Ill. App. 3d 1169, 1172-73 (2010), the Fourth District held that when the State fails to comply with the requirements of section 111-3(c), the proper remedy is to vacate the defendant's enhanced sentence. We agree. As a result, we vacate defendant's Class 2 sentence and remand to the trial court with directions to sentence defendant to between 2 and 10 years in prison, the special Class 3 penalty range established for the offense (720 ILCS 5/24-1.1(e) (West 2008)).

¶ 33                                CONCLUSION

¶ 34    For the reasons stated, we affirm defendant's conviction, vacate defendant's Class 2 sentence, and remand with directions to sentence defendant to between 2 and 10 years in prison.

¶ 35    Affirmed in part, and vacated in part; cause remanded with directions.