# Illinois Official Reports

## Appellate Court

*People v. Lewis*, 2014 IL App (1st) 122126

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH LEWIS, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-2126 |
| Filed | June 30, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for unlawful use of a weapon by a felon was upheld over his contentions that he was not given notice that the State would seek a Class 2 sentence, that the trial court improperly used his prior conviction for aggravated robbery as an element of his offense and to enhance his sentence and that the jury was improperly instructed that his prior conviction could be considered in determining whether his guilt was established beyond a reasonable doubt, since defendant's prior aggravated robbery conviction was an element of Class 2 unlawful use of a weapon by a felon, notice that a Class 2 sentence would be sought was not required, defendant's double enhancement claim failed where he was charged, convicted, and sentenced as a Class 2 offender, and even assuming an error occurred in the instructions, there was no serious risk that defendant was convicted due to the jury's misunderstanding of the law. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-12612; the Hon. Stanley J. Sacks, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Kate E. Schwartz, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, John E. Nowak, and Andrea V. Salone, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE REYES delivered the judgment of the court, with opinion. Presiding Justice Rochford and Justice Hall concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant Joseph Lewis appeals his conviction of unlawful use of a weapon by a felon (UUW by a felon) after a jury trial. 720 ILCS 5/24-1.1(a) (West 2010). Defendant was sentenced to five years' imprisonment as a Class 2 offender. 720 ILCS 5/24-1.1(e) (West 2010). On appeal, Lewis contends the trial court erred in sentencing him as a Class 2 offender for two reasons: (1) the State failed to provide notice pursuant to section 111-3(c) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/111-3(c) (West 2010)) that the State would seek a Class 2 sentence; and (2) the trial court engaged in double enhancement by applying his one prior conviction for aggravated robbery, both as an element of his offense and to enhance his sentence. Defendant further contends the trial court erred in instructing the jury that it could consider his prior aggravated robbery conviction in determining whether the State proved the UUW by a felon charge beyond a reasonable doubt. For the reasons which follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3    On August 15, 2011, defendant was charged by information with one count of UUW by a felon pursuant to section 24-1.1(a) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/24-1.1(a) (West 2010)) and two counts of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a) (West 2010)).[1] Specifically, defendant's information as to the UUW by a felon charge alleged that he committed the "offense of unlawful use or possession of a weapon by a felon" as he "knowingly possessed on or about his person any firearm, to wit: a shotgun, after having been previously convicted of the felony offense of aggravated robbery, under case number 08CR17706." The two aggravated unlawful use of a weapon counts were nol-prossed prior to trial. The record discloses the following facts.

¶ 4    Officer John Sego (Sego) of the ninth district of the Chicago police department testified that on July 27, 2011, at 1:30 a.m. he was on routine patrol with his partner, Officer Michael

---

[1]Aggravated unlawful use of a weapon counts indicated the State intended to seek a Class 2 sentence.

Alaniz (Alaniz), on the middle of the block between 4700 to 4800 on Winchester when he heard three loud shots. Sego and Alaniz lowered the windows of the police vehicle and Alaniz began driving at a "real slow pace down Winchester." Two minutes later, Sego received a call over the police radio of "male with a gun, shots fired" at 4839 South Winchester. Sego and Alaniz were half a block away from the location when they responded to the call. Officer Robert Caulfield along with his partner Officer David Carey also responded to the call. Sego testified Alaniz "pulled up to roughly 4835 South Winchester" and both officers exited the vehicle. The officers approached the front of 4839 South Winchester, looked down the gangway on the south side of the residence, and observed defendant standing at the end of the gangway holding a shotgun to his side. No lighting illuminated the gangway, however, Sego testified he could see defendant's face. Both officers announced their office. The defendant then ran.

¶ 5      Sego further testified the officers then pursued defendant down the gangway, with Alaniz running in front of him. Defendant ran to the rear of the residence, up a flight of stairs, and through the back door of an enclosed porch that led to the first-floor apartment. The officers pursued defendant up the back stairs and Alaniz then kicked the porch door open. Sego testified he could see defendant standing in the doorway of the first-floor apartment. Sego observed defendant enter the unit. The officers followed defendant into the illuminated residence, where Sego observed defendant "pitch the shotgun to the left side into an adjacent bedroom" next to the kitchen. The officers then placed defendant in custody. Sego testified Chicago police officer Robert Caulfield (Caulfield), who was "working another beat car," was "right behind" him. Sego indicated to Caulfield that there was a shotgun on the bedroom floor. Caulfield recovered the shotgun and a spent shell casing from inside the weapon.

¶ 6      Sego testified that defendant was removed from the apartment and then placed in his police vehicle. After advising defendant of his *Miranda* rights, and defendant acknowledging those rights, Sego testified he asked defendant "who he was shooting at." Sego testified that defendant's response was, "we were just having fun with it, I wasn't popping at anyone." Sego testified "popping" is "a term used for shooting at one particular individual or place." In addition, Sego testified that while he and his partner were chasing defendant they did not observe anyone else inside the residence. After defendant was placed under arrest Sego testified that two of the residents of 4839 South Winchester, James McCain (McCain) and Ms. McCain, McCain's mother,[2] approached him, but they were not in the bedroom where the shotgun was located.

¶ 7      On cross-examination, Sego testified that when he observed defendant in the gangway, defendant was approximately 50 feet away from him. Once defendant gave chase, defendant was out of Sego's sight-line for three to four seconds. Sego did not have his weapon drawn, but believed his partner did have his weapon drawn when he was inside the residence. Sego testified that someone in the residence other than defendant may have had a weapon. When asked whether any of the officers on the scene searched the entire residence, Sego testified he did not know.

_____

[2]Sego's partner, Officer Michael Alaniz, testified McCain's father also resided at the property. Alaniz testified he never spoke with McCain's parents regarding the incident and did not get their names or phone numbers. Accordingly, the record is devoid of any reference to James McCain's parents' first names.

¶ 8        Officer Michael Alaniz testified consistently with Sego's testimony. On July 27, 2011, at 1:30 a.m. while on routine patrol in the 4700 block of South Winchester he heard three loud gunshots. Alaniz proceeded driving his unmarked police vehicle at approximately 10 to 15 miles per hour down Winchester with the windows down and the headlamps off to achieve an "element of surprise." He stopped the vehicle at 4800 South Winchester because he received a call over the police radio indicating shots were fired at 4938 South Winchester. Once he arrived at the location, he and Sego exited the vehicle and approached the residence. Alaniz observed defendant standing at the end of the gangway holding a shotgun. Alaniz could not view defendant as he rounded the rear of the building because defendant was already in the back of the building. Once Alaniz was 10 to 15 feet away from defendant in the back of the building he observed defendant enter the residence through the back door. When Alaniz reached the back door, he proceeded to "kick the door in." Alaniz observed defendant go into the "actual house," which was the first-floor apartment of a two-flat building. Alaniz testified defendant entered an illuminated kitchen and observed defendant was still in possession of the shotgun. Alaniz followed defendant into the kitchen with Sego behind him. Alaniz then observed defendant toss the shotgun into a bedroom, which was adjacent to the kitchen. Alaniz testified at the time defendant tossed the shotgun into the bedroom, he did not know whether anyone was in the bedroom. He later learned the bedroom was not occupied. Alaniz testified he, along with Sego, placed defendant in custody while in the kitchen. Alaniz further testified that as he was placing defendant in custody, Caulfield entered the residence and he informed Caulfield that the shotgun was in the bedroom. Alaniz further testified 8 to 10 seconds elapsed from the moment he first observed defendant standing in the gangway with the shotgun until he detained defendant in the kitchen of the residence.

¶ 9        On cross-examination, Alaniz testified that when he approached 4839 South Winchester he had his weapon drawn. Alaniz further testified that prior to kicking it in, he did not know whether the porch door was locked. Alaniz's weapon was not drawn when he was in the kitchen of the residence. He did not search the remainder of the residence.

¶ 10        Officer Robert Caulfield testified he was working and assigned to the ninth district on the night of July 27, 2011. He was working with Officer David Carey when he received a call of shots fired at 4839 South Winchester at 1:30 a.m. He and his partner responded to the call. Upon arriving at the location, Caulfield testified he observed fellow officers Sego and Alaniz chasing an individual down a gangway. Caulfield exited his vehicle and gave chase toward defendant, following the officers down the gangway into the back door of the first floor apartment. Upon entering the apartment, Caulfield testified that Alaniz told him, "Rob, there is a gun in the bedroom." Caulfield then retrieved a Remmington 870, 20-gauge shotgun from the bedroom that was directly off of the kitchen. Caulfield testified at the time he retrieved the weapon, Sego and Alaniz were placing the subject into custody. Caulfield cleared the weapon to ensure it had no live rounds and observed one spent 20-gauge shell casing in the weapon. Caulfield identified defendant in court as the subject he observed being placed into custody. Caulfield further identified the shotgun in court as the weapon he recovered from 4839 South Winchester.

¶ 11        On cross-examination, Caulfield testified he did not request an evidence technician come to the apartment to examine the scene, nor did he request the weapon be tested for DNA or fingerprints.

- 4 -

¶ 12    The parties then stipulated that defendant had a prior felony conviction in case number 08 CR 17706. The State rested its case and defendant moved for a directed verdict which was denied.

¶ 13    Defendant then testified to the following facts. At the time of trial, defendant was 20 years of age and resided at 5116 South Hoyne in Chicago. He had completed his formal education through the ninth grade. On the night of July 27, 2011, he was going to eat some food with his friend, McCain, and then spend the evening at McCain's residence. He arrived at the McCain residence at 7:30 p.m. and began playing video games. A little after 1 a.m. he heard gunshots and he and McCain got up and looked around. Defendant and McCain stayed in the front room and did nothing. At this time, McCain's mother and stepfather were at the residence, as well. Five or ten minutes later there was a knock at the door. Defendant knew it was the Chicago police because he observed flashing lights through the window and they were "knocking loud," but neither he nor James answered the door. After five minutes had passed, McCain's stepfather opened the door. The police officers, Sego and Alaniz, requested defendant step out of the residence and then they placed him under arrest. There were five, six, or seven police officers who arrived at the McCain residence. Alaniz placed defendant in handcuffs and requested defendant go to the police vehicle. Defendant walked to the police vehicle unaccompanied. At this time, the police were searching inside and outside of the McCain residence. Defendant further observed officers knocking at the basement apartment door and searching that individual's unit. Ten minutes from when he initially entered the McCain residence, Alaniz exited the residence with a shotgun.

¶ 14    Defendant further testified in 2008 he was convicted of aggravated robbery.[3] Additionally, defendant testified he usually stayed over at McCain's residence twice a week due to the fact it is too dangerous to walk back to his own residence alone. Defendant testified that on July 27, 2011, he did not have a shotgun, did not fire a shotgun, did not run from police, and did not say anything to the police.

¶ 15    On cross-examination, defendant testified the "second officer lead me to the back and placed me in the back of the car and then went into the house and proceeded and searched." Defendant further testified an officer came out of the front of the house and informed defendant he found the shotgun.[4] The defense rested its case.

¶ 16    The trial court and the parties, outside the presence of the jury, considered which jury instructions would be utilized. The trial court suggested the use of Illinois Pattern Jury Instructions, Criminal, No. 3.13X (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 3.13X); relating to evidence of a defendant's prior conviction for two relevant purposes: an element of the crime and credibility. IPI Criminal 4th No. 3.13X, as given, stated:

    "Ordinarily, evidence of a defendant's prior conviction of an offense may be considered by you only as it may affect his believability as a witness and must not be considered by you as evidence of his guilt of the offense with which he is charged.

---

[3]The record does not indicate under which section of the aggravated robbery statute defendant was convicted. Throughout the trial and at the sentencing hearing, all parties, including defendant, stated defendant was previously convicted of aggravated robbery, a Class 1 felony.

[4]The record of proceedings is not clear as to which officer defendant is speaking about on cross-examination.

However, in this case, because the State must prove beyond a reasonable doubt the proposition that the defendant has previously been convicted of a felony offense, you may also consider evidence of defendant's prior conviction of the offense of Aggravated Robbery for the purpose of determining whether the State has proved that proposition."

During the instruction conference, defendant objected to the use of IPI Criminal 4th No. 3.13X as he believed the instruction would be confusing and would serve the jury better by being separated into two different instructions. The trial court concluded it would utilize IPI Criminal 4th No. 3.13X, stating:

"I think that is why it [IPI Criminal 4th No. 3.13X] was enacted by the Supreme Court Rule Committee for situations just like this. This is what the committee notes say: This instruction should be given only when an element of the charged offense is defendant previously committing prior offense. That is when it should be given. Those are the exact circumstances in this case. Prior conviction for the felony for impeachment, prior conviction of felony for the element of the crime weapon violation by a felon."

Defendant offered no further objections to the jury instructions.

¶ 17     Following closing arguments, the reading of the jury instructions, and deliberations, the jury found defendant guilty of UUW by a felon. The trial court denied defendant's motion for a new trial. Defendant did not raise an objection to IPI Criminal 4th No. 3.13X in his posttrial motion.

¶ 18     At the sentencing hearing, the State presented the presentence investigative report, which indicated defendant's prior aggravated robbery conviction was a Class 1 offense, and requested defendant be sentenced as a Class 2 offender. Defense counsel asserted that defendant should not be sentenced as a Class 2 offender as aggravated robbery is not a forcible felony. There was, however, no further explanation or argument. The trial court responded:

"It's a class 1 anyway aggravated robbery. So whether it's forceable [*sic*] felony or not is academic. He is eligible to 3 to 14 based on the fact the prior conviction for aggravated robbery is a class 1 felony. So the range is 3 to 14."

The trial court provided no further explanation for its ruling.

¶ 19     After considering all the factors in aggravation and mitigation the trial court determined defendant to be a Class 2 offender and sentenced him to five years' imprisonment with two years of mandatory supervised release. Thereafter, defendant filed a motion to reconsider in which he argued only that his sentence was excessive. On July 6, 2012, the trial court denied the motion. That same day, defendant filed this timely notice of appeal.

¶ 20                              ANALYSIS

¶ 21     On appeal, defendant contends the trial court erred in sentencing him as a Class 2 offender for two reasons: (1) the State failed to provide notice pursuant to section 111-3(c) of the Code (725 ILCS 5/111-3(c) (West 2010)) that the State would seek a Class 2 sentence; and (2) the trial court engaged in double enhancement by using his prior conviction of aggravated robbery both as an element of the offense and to enhance his sentence. Defendant further contends the trial court erred in instructing the jury that it could consider his prior

aggravated robbery conviction in determining whether the State proved the UUW by a felon charge beyond a reasonable doubt when the parties previously stipulated to the prior felony conviction. We address defendant's contentions in turn.

¶ 22                    Whether the Trial Court Erred in Sentencing Defendant
¶ 23                        *Notice Pursuant to Section 111-3(c)*
¶ 24        On appeal, defendant contends he is not eligible for Class 2 sentencing because the State failed to notify him under section 111-3(c) of its intent to seek a Class 2 sentence. Defendant maintains that "[o]rdinarily, the UUW-felon offense is a Class 3 felony," therefore, the State must expressly indicate in the charging instrument that it intends to seek a Class 2 sentence. Defendant asserts that because his UUW by a felon charge was premised on his prior aggravated robbery conviction, and aggravated robbery is not one of the enumerated forcible felonies listed in section 2-8 of the Criminal Code, his information did not notify him of the State's intent to seek a Class 2 sentence. Defendant acknowledges that he raises this issue for the first time on appeal, but asserts a void sentence may be attacked at any time. Alternatively, he requests we review his claim for plain error, as it affects his substantial rights.

¶ 25        The State responds that the trial court did not err in sentencing defendant as a Class 2 offender because a Class 2 sentence was the only sentence defendant could have received under the UUW by a felon statute (720 ILCS 5/24-1.1(e) (West 2010)). Moreover, because the prior felony conviction for aggravated robbery was an element of the UUW by a felon offense and also a forcible felony, defendant was notified the State intended to seek a Class 2 sentence.

¶ 26        Initially, we agree defendant failed to preserve this issue for review. A void sentence, however, may be attacked at any time. *People v. Arna*, 168 Ill. 2d 107, 113 (1995). Further, "[i]t is well established that a sentencing judge cannot impose a penalty not otherwise allowed by the sentencing statute in question." *People v. Palmer*, 218 Ill. 2d 148, 154 (2006), *overruled on other grounds by People v. Petrenko*, 237 Ill. 2d 490 (2010); see *In re Rodney S.*, 402 Ill. App. 3d 272, 287 (2010) (finding respondent's sentence to be void because the trial court based its sentence on an incorrect finding that aggravated battery was a forcible felony).

¶ 27        Alternatively, defendant requests the error be reviewed under the plain-error doctrine. Supreme Court Rule 615(a) provides that we may review "[p]lain errors or defects affecting substantial rights," even though the defendant did not object to such errors in a posttrial motion. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The plain-error doctrine allows us to review clear and obvious errors which were waived below. *People v. Nowells*, 2013 IL App (1st) 113209, ¶ 18; *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). In the sentencing context, the defendant must demonstrate either that "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545. Under either prong of the plain-error doctrine, the burden of persuasion remains on the defendant. *People v. Bowman*, 2012 IL App (1st) 102010, ¶ 30. We elect to consider the error pursuant to the second prong of the plain-error doctrine. See *Nowells*, 2013 IL App (1st) 113209, ¶¶ 19-20.

¶ 28    The first step in a plain-error analysis is to determine whether any error occurred at all. *People v. Wilson*, 404 Ill. App. 3d 244, 247 (2010). Therefore, in the present case, we first turn to consider whether the trial court erred in sentencing defendant as a Class 2 offender based on defendant's argument that the charge failed to notify him that the State would seek a Class 2 sentence, even though the issue was not properly preserved for review. Because this issue involves an interpretation of section 111-3(c) of the Code, we review it *de novo*. *People v. Easley*, 2014 IL 115581, ¶ 13 (interpreting section 111-3(c) of the Code).

¶ 29    In the present case, to prove UUW by a felon, the State was required to establish that defendant knowingly possessed a weapon or ammunition and that defendant had previously been convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2010). Defendant's information alleged he committed the "offense of unlawful use or possession of a weapon by a felon" as he "knowingly possessed on or about his person any firearm, to wit: a shotgun, after having been previously convicted of the felony offense of aggravated robbery, under case number 08CR17706."

¶ 30    At sentencing, the State sought a Class 2 sentence based on defendant's prior conviction for aggravated robbery under the portion of section 24-1.1(e) which required that defendants who had previously been convicted of a *forcible felony* be sentenced as Class 2 offenders. 720 ILCS 5/24-1.1(e) (West 2010). Section 24-1.1(e) states in relevant part:

> "(e) Sentence. Violation of this Section by a person not confined in a penal institution shall be a Class 3 felony for which the person shall be sentenced to no less than 2 years and no more than 10 years and any second or subsequent violation shall be a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 14 years. *Violation of this Section by a person not confined in a penal institution who has been convicted of a forcible felony*, a felony violation of Article 24 of this Code or of the Firearm Owners Identification Card Act, stalking or aggravated stalking, or a Class 2 or greater felony under the Illinois Controlled Substances Act, the Cannabis Control Act, or the Methamphetamine Control and Community Protection Act *is a Class 2 felony for which the person shall be sentenced to not less than 3 years and not more than 14 years*." (Emphases added.) 720 ILCS 5/24.1-1(e) (West 2010).

¶ 31    Section 2-8 of the Criminal Code defines "forcible felony" to mean:

> "treason, first degree murder, second degree murder, predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, *robbery*, burglary, residential burglary, aggravated arson, arson, aggravated kidnaping, kidnaping, aggravated battery resulting in great bodily harm or permanent disability or disfigurement *and any other felony which involves the use or threat of physical force or violence against any individual*." (Emphases added.) 720 ILCS 5/2-8 (West 2010).

¶ 32    Aggravated robbery is not one of the enumerated offenses defined as a forcible felony. *Id.* The State, however, maintains that aggravated robbery is a forcible felony under the residual clause of section 2-8. Defendant does not argue otherwise.

¶ 33    Defendant contends on appeal the State failed to notify him that it was seeking a Class 2 sentence based on his prior aggravated robbery conviction pursuant to section 111-3(c) of the Code (725 ILCS 5/111-3(c) (West 2010)). Section 111-3(c) provides:

"When the State seeks an enhanced sentence because of a prior conviction, the charge shall also state the intention to seek an enhanced sentence and shall state such prior conviction so as to give notice to the defendant. However, the fact of such prior conviction and the State's intention to seek an enhanced sentence are not elements of the offense and may not be disclosed to the jury during trial unless otherwise permitted by issues properly raised during such trial. For the purposes of this Section, 'enhanced sentence' means a sentence which is increased by a prior conviction from one classification of offense to another higher level classification of offense set forth in Section 5-4.5-10 of the Unified Code of Corrections (730 ILCS 5/5-4.5-10); it does not include an increase in the sentence applied within the same level of classification of offense." 725 ILCS 5/111-3(c) (West 2010).

The purpose of section 111-3(c) is "to ensure that a defendant received notice, before trial, of the *offense* with which he is charged." (Emphasis in original.) *People v. Jameson*, 162 Ill. 2d 282, 290 (1994); *Easley*, 2014 IL 115581, ¶ 18.

¶ 34    There once existed a split in authority within the divisions of the First District regarding whether the State must notify a defendant pursuant to section 111-3(c) that it intends to seek a Class 2 sentence when a defendant is charged with UUW by a felon. In the recent opinions of *People v. Easley*, 2012 IL App (1st) 110023, *overruled by Easley*, 2014 IL 115581; *People v. Whalum*, 2012 IL App (1st) 110959, *appeal denied*, No. 115582 (May 28, 2014) (supervisory order); *Nowells*, 2013 IL App (1st) 113209, *appeal denied*, No. 116839 (May 28, 2014); *People v. Pryor*, 2013 IL App (1st) 121792, *appeal denied*, No. 117276 (May 28, 2014) (supervisory order); *People v. Polk*, 2014 IL App (1st) 122017; and *People v. Soto*, 2014 IL App (1st) 121937, the First District of our appellate court had the occasion to consider how section 111-3(c) should be interpreted in the context of the UUW by a felon statute. In each of the six cases, the defendant asserted he was not provided with notice pursuant to section 111-3(c) that he would be sentenced as a Class 2 offender under section 24-1.1(e) of the Criminal Code based on a prior conviction. *Easley*, 2012 IL App (1st) 110023, ¶ 23; *Whalum*, 2012 IL App (1st) 110959, ¶ 32; *Nowells*, 2013 IL App (1st) 113209, ¶ 17; *Pryor*, 2013 IL App (1st) 121792, ¶ 34; *Polk*, 2014 IL App (1st) 122017, ¶ 13; *Soto*, 2014 IL App (1st) 121937, ¶ 15.

¶ 35    This court in *Easley*, *Whalum*, and *Pryor* held section 111-3(c) requires the State to set forth its intention to seek a Class 2 sentence for UUW by a felon in the charging instrument, and that the failure to do so required the vacating of the defendant's Class 2 sentence and resentencing of the defendant as a Class 3 offender. *Easley*, 2012 IL App (1st) 110023, ¶ 32; *Whalum*, 2012 IL App (1st) 110959, ¶ 37; *Pryor*, 2013 IL App (1st) 121792, ¶¶ 37, 42. *Nowells*, *Polk*, and *Soto*, however, held, in the case of UUW by a felon, the prior conviction is not an enhancement; it is an element of the offense, therefore, section 111-3(c) does not apply when the prior conviction is already an element of the offense. *Nowells*, 2013 IL App (1st) 113209, ¶ 27; *Polk*, 2014 IL App (1st) 122017, ¶ 28; *Soto*, 2014 IL App (1st) 121937, ¶ 24. Defendant, here, requests this court apply the reasoning of the appellate court decision in *Easley* and its progeny to his case.

¶ 36    Our supreme court, however, recently addressed the issue of whether the State is required to notify a defendant pursuant to section 111-3(c) of the Code of its intent to seek a Class 2 sentence under section 24-1.1(e) of the Criminal Code in *People v. Easley*, 2014 IL 115581; 720 ILCS 5/24-1.1(e) (West 2008). In *Easley*, the defendant was charged with aggravated

unlawful use of a weapon and UUW by a felon in violation of section 24-1.1(a) of the Criminal Code (720 ILCS 5/24-1.1(a) (West 2008)) based on defendant's prior conviction for UUW by a felon. *Easley*, 2014 IL 115581, ¶ 10. After a bench trial, the trial court found the defendant guilty of aggravated unlawful use of a weapon and UUW by a felon and merged all counts into the UUW by a felon count. *Id.* The defendant was sentenced to nine years in prison as a Class 2 offender based on his prior conviction for UUW by a felon. *Id.* Before the appellate court, the defendant asserted that the trial court improperly sentenced him as a Class 2 offender where the State charged him with a Class 3 offense and did not provide notice that it intended to seek a Class 2 sentence, in violation of section 111-3(c) of the Code of Criminal Procedure. *Id.* ¶ 11. The appellate court vacated defendant's Class 2 sentence and remanded the matter to the trial court with directions to sentence defendant as a Class 3 offender, concluding the defendant did not receive notice pursuant to the statute. *Id.*

¶ 37    Our supreme court held that "notice under section 111-3(c) is not necessary when the prior conviction is a required element of the offense." *Id.* ¶ 19. The supreme court reasoned:

> "In construing the language of section 111-3(c), it is clear that the noticeprovision applies only when the prior conviction that would enhance the sentence is not already an element of the offense. The language of section 111-3(c) states that 'the fact of such prior conviction and the State's intention to seek an enhanced sentence *are not elements of the offense* and may not be disclosed to the jury during trial unless otherwise permitted by issues properly raised during such trial.' (Emphasis added.) [Citation.] This language necessarily implies that section 111-3(c) applies only when the prior conviction is not an element of the offense. *** Under these circumstances, only one class of felony conviction is possible for the offense as alleged in the charging instrument." *Id.*

Applying this reasoning to the facts of the case, our supreme court explained:

> "The indictment in this case alleged that defendant was guilty of unlawful use of a weapon by a felon in that he was previously convicted of unlawful use of a weapon by a felon. The section 111-3(c) notice provision clearly does not apply in this case because the State did not seek to enhance defendant's sentence with his prior conviction. Rather, as alleged in the indictment, defendant's Class 2 sentence was the only statutorily allowed sentence under section 24-1.1(e) of the Criminal Code (720 ILCS 5/24-1.1(e) (West 2008)). Defendant could not have been given a Class 3 sentence under the applicable sentencing statute." *Id.* ¶ 22.

¶ 38    In this case, defendant's prior aggravated robbery conviction was an element of his UUW by a felon charge and was set forth in the information. Moreover, where the aggravated robbery is a forcible felony under the residual clause of section 2-8 the only statutorily allowed sentence under section 24-1.1(e) would be a Class 2 sentence. Defendant's Class 2 sentence was based on the prior conviction which was an element of the charged offense and required by the statutory provisions of section 24-1.1(e). Accordingly, under *Easley*, the section 111-3(c) notice provision does not apply. *Id.* ¶ 19.

¶ 39    We note that although defendant raised an objection at sentencing to the trial court considering his prior aggravated robbery conviction to be a forcible felony, he filed no written motion (or posttrial motion) raising this issue and did not fully argue this issue before the trial court. In addition, on appeal, defendant does not assert that his aggravated robbery conviction was *not* a forcible felony within the residual clause of section 2-8. Because

defendant fails to assert these issues on appeal, we decline to consider whether felonies which fall under the residual clause of section 2-8 are to be considered any differently than enumerated felonies for the purposes of the UUW by a felon statute and section 111-3(c). See *Polk*, 2014 IL App (1st) 122017. Accordingly, since defendant's prior felony conviction for aggravated robbery is an element of the offense of the Class 2 UUW by a felon, section 111-3(c) does not apply and the trial court did not err in sentencing him as a Class 2 offender. *Easley*, 2014 IL 115581, ¶ 19.

¶ 40                                    *Double Enhancement*

¶ 41       Defendant contends he was improperly subjected to double enhancement because his prior aggravated robbery felony conviction was used both to prove an element of the UUW by a felon offense and to elevate his sentence to a Class 2 offense and impose a harsher sentence. Our supreme court in *Easley*, determined that when a defendant is charged, convicted, and sentenced as a Class 2 offender, the double enhancement claim necessarily fails. *Easley*, 2014 IL 115581, ¶ 28.

¶ 42                                      Jury Instructions

¶ 43       Defendant contends the trial court improperly instructed the jury, which, in turn, misled or confused the jury, thereby depriving him of his constitutional right to a fair trial. Specifically, defendant asserts the trial court erred in providing IPI Criminal 4th No. 3.13X, as defendant had previously stipulated to his prior felony conviction, thereby satisfying the felon element of his charged offense. Defendant concludes that IPI Criminal 4th No. 3.13X inappropriately suggests to the jury that it may consider the prior conviction as propensity evidence of defendant's guilt.

¶ 44       The State responds that defendant forfeited this issue when he filed a posttrial motion for a new trial and failed to include any claim of improper jury instructions. In addition, the State asserts defendant cannot demonstrate that plain error occurred because the trial court did not err in using IPI Criminal 4th No. 3.13X.

¶ 45       "The sole function of jury instructions is to convey to the jury the correct principles of law applicable to the evidence submitted to it in order that, having determined the final state of facts from the evidence, the jury may, by the application of proper legal principles, arrive at a correct conclusion according to the law and the evidence." *People v. Pinkney*, 322 Ill. App. 3d 707, 717 (2000). Jury instructions should not be misleading or confusing. *Id.* Their correctness does not depend on whether defense counsel can imagine a problematic meaning, but whether ordinary persons acting as jurors would fail to understand them. *People v. Herron*, 215 Ill. 2d 167, 188 (2005).

¶ 46       Generally, we will reverse a trial court's determination regarding what instruction to give only if the trial court abused its discretion.[5] *People v. Rodriguez*, 387 Ill. App. 3d 812, 821

_____

[5]Defendant argues that we should review this matter *de novo*, as it involves whether the instruction accurately conveyed to the jury the law applicable to the case. Defendant, however, does not dispute that the information contained in IPI Criminal 4th No. 3.13X (that the jury could consider the prior felony as an element of the crime and for purposes of credibility) should have been provided to the jury. Instead, defendant asserts it should have been provided in two separate instructions. This is does not raise a question of law. Therefore, we review the matter for an abuse of discretion.

(2008). An abuse of discretion occurs only where the trial court's ruling is arbitrary, fanciful or unreasonable, or where no reasonable person could take the view adopted by the trial court. *Id.*

¶ 47 Defendant acknowledges he forfeited this issue by failing to raise it in his posttrial motion and asks us to review it under the plain-error doctrine. Illinois Supreme Court Rule 451(c) (eff. July 1, 2006) states, "substantial defects [in jury instructions in criminal cases] are not waived by failure to make timely objections thereto if the interests of justice require." "Rule 451(c)'s exception to the waiver rule for substantial defects applies when there is a grave error or when the case is so factually close that fundamental fairness requires that the jury be properly instructed." *People v. Hopp*, 209 Ill. 2d 1, 7 (2004). This analysis is identical to the plain-error doctrine of Illinois Supreme Court Rule 615(a). See *People v. Durr*, 215 Ill. 2d 283, 296 (2005) (Rule 451(c) and Rule 615(a) are construed identically).

¶ 48 As previously discussed, the plain-error doctrine carves out an exception to forfeiture in order to permit review of issues otherwise procedurally defaulted. *People v. Lewis*, 234 Ill. 2d 32, 42 (2009). Under the plain-error doctrine, this court will review forfeited challenges when: (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant; or (2) a clear or obvious error occurred, and the error is so serious that it affected the fairness of the defendant's trial and the integrity of the judicial process, regardless of the closeness of the evidence. *Herron*, 215 Ill. 2d at 178-79. The defendant bears the burden of persuasion under each prong of the doctrine. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008). If "the error is found not to rise to the level of a plain error as contemplated by Rule 615(a), the procedural default must be honored." *People v. Keene*, 169 Ill. 2d 1, 17 (1995). A jury instruction error rises to the level of plain error only when it "creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial." *Hopp*, 209 Ill. 2d at 8. Accordingly, any alleged jury instruction error in this case is forfeited unless defendant can show such error threatened the fundamental fairness of his trial. Our first step "is to determine whether error occurred in the giving of the instruction." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 49 In defendant's case, the jury was issued the following instruction:

"Ordinarily, evidence of a defendant's prior conviction of an offense may be considered by you only as it may affect his believability as a witness and must not be considered by you as evidence of his guilt of the offense with which he is charged.

However, in this case, because the State must prove beyond a reasonable doubt the proposition that the defendant has previously been convicted of a prior felony offense, you may also consider evidence of the defendant's prior conviction of the offense of Aggravated Robbery for the purpose of determining whether the state has proved that proposition."

IPI Criminal 4th No. 3.13X. This instruction is employed when a defendant has been previously convicted of committing a prior offense and he testifies at his trial. See Illinois Pattern Jury Instructions, Criminal, No. 3.13X, Committee Note (4th ed. 2000). This instruction informs the jury that the prior conviction is admissible as substantive evidence of the prior conviction as well as for impeachment purposes against the defendant. *Id.*

¶ 50 Defendant asserts *People v. Hughes*, 343 Ill. App. 3d 506 (2003), supports his argument that since he stipulated to his prior conviction the jury should have been instructed that the

- 12 -

conviction should not be considered as evidence of his propensity to commit the charged crime. The defendant in *Hughes* was also charged with UUW by a felon. The parties stipulated to the defendant's prior felony conviction and the defendant also testified he was a convicted felon. Following the stipulation, the trial court instructed the jury:

> " '[W]hat this means, Ladies and Gentlemen, is that since the parties agree to it, that's a matter that does not have to be proven since the defense and the State agree to that fact.' " *Id.* at 516.

At the close of the trial, the jury was instructed pursuant to Illinois Pattern Jury Instructions, Criminal, No. 3.13 (4th ed. 2000) on the elements of unlawful possession of a weapon by a felon which provided the State was required to prove defendant knowingly possessed firearm ammunition and defendant had previously been convicted of a felony. *Hughes*, 343 Ill. App. 3d at 515-16. This instruction also provided that the parties stipulated that defendant had been previously convicted of a felony. *Id.* at 516. The jury was further instructed that the evidence of defendant's prior conviction could not be used as substantive evidence, but only as to defendant's credibility. *Id.*

¶ 51    In *Hughes*, the defendant on appeal challenged the sufficiency of the evidence upon which the jury convicted him of UUW by a felon. *Id.* at 514-15. The defendant specifically argued that because the jury is presumed to have followed the instructions and was instructed that it could not consider the defendant's prior conviction as substantive evidence, the evidence was insufficient to support a conviction for unlawful use or possession of weapons by a felon. *Id.* at 515. We noted that the parties stipulated to the defendant's prior felony conviction and that during the trial after the stipulation was made, the jury was instructed that, based on the stipulation between the parties, the State did not have to prove that the defendant was a felon for purposes of establishing the offense. *Id.* at 516. We concluded that under all the circumstances, the jury could have found the defendant guilty of UUW by a felon beyond a reasonable doubt. *Id.*

¶ 52    The *Hughes* decision does not support a conclusion that the instructions here caused confusion. The jury was apprised of the meaning and significance of a stipulation, the elements of UUW by a felon, and how to consider defendant's prior felony conviction in light of his testifying on his own behalf. Upon the stipulation of the parties to defendant's prior felony conviction, the court instructed the jury, "A stipulation, ladies and gentlemen, means that the lawyers agree that certain facts exist. There is no need to see the witness testify to those facts. The parties agree to the facts. You can take a stipulation as if the person were here testifying." The defendant then testified on direct examination to his prior aggravated robbery conviction. The jury was instructed on the elements of UUW by a felon and was also instructed that, because defendant testified, his prior felony conviction could be used as impeachment evidence against defendant. The jury was further provided with the limiting instruction, "[o]rdinarily, evidence of a defendant's prior conviction of an offense may be considered by you only as it may affect his believability as a witness and must not be considered by you as evidence of his guilt of the offense with which he is charged" as part of IPI Criminal 4th No. 3.13X. There was no error in the jury instructions.

¶ 53    Defendant further relies on *People v. Peete*, 318 Ill. App. 3d 961, 969 (2001), for what he believes is the proposition that where the defendant stipulates to his prior conviction as an element of the charged offense trial courts should "instruct the jury that it can consider the convicted-felon-status element of the crime as proved by the stipulation." This quotation

from the case, however, is taken out of context. The *Peete* court was actually suggesting a procedure regarding stipulations on prior convictions that are an element of the crime charged as originally set forth in *Old Chief v. United States*, 519 U.S. 172 (1997). The *Peete* court was not considering whether jury instructions regarding the elements of the offense and the prior conviction were confusing, as defendant asserts here. Moreover, in the present case the trial court instructed the jury directly after the parties submitted the stipulation that it can consider the convicted-felon-status element of the crime as proven by stipulation.

¶ 54 Defendant cites no authority which holds that submitting IPI Criminal 4th No. 3.13X to the jury when the parties have stipulated to the prior felony conviction element of the offense, leads to jury confusion. Defendant sets forth generally that "providing jurors with conflicting pieces of information leads to confusion." We, however, find that the jury instruction provided was not confusing, as it accurately set forth the elements of the offense of UUW by a felon and informed the jury how to view defendant's prior conviction in light of the offense charged and his testimony. Moreover, the record is devoid of any evidence of jury confusion. The jury sent no correspondence to the judge during the course of their deliberations. See *cf. People v. Hobbs*, 249 Ill. App. 3d 679, 684-85 (1993) (noting there was "little doubt" the jury was confused by the instruction, as it sent two notes to the judge and found the defendant not guilty of first-degree murder, but guilty of armed violence based on first-degree murder). Accordingly, we conclude that no error occurred. A jury instruction error rises to the level of plain error only when it "creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial." *Hopp*, 209 Ill. 2d at 8. Even if there was error, we cannot say the instructions contained in IPI Criminal 4th No. 3.13X created a serious risk that the jurors incorrectly convicted defendant because they did not understand the law. Therefore, based on the record before us, we conclude no error, and, thus, no plain error, occurred.

¶ 55                                   CONCLUSION
¶ 56 For the above reasons we affirm the judgment of the trial court.

¶ 57 Affirmed.